### JOHN G. MONTGOMERY AND WIFE V. JOHN CULTON.

The effect of an ordinary transfer of property from one person to another, with the agreement on the part of the latter that he will pay the just demands against the former, is to raise a trust for the creditors of the assignor, though the transfer was made without their knowledge; and they may maintain their actions against the assignee; and the principle is the same where the property is charged with a trust in favor of third persons, and the assignee contracts to save the assignor harmless against said claims.

Where, after an estate is partially administered, the heir claims the estate under Art. 1197 Hart. Dig., the executor or administrator should retain in his hands a sufficient amount to pay the debts which have been established, or may be established by suit, the heir being liable only, by that Article, for demands not presented to the administrator; but where the heir takes possession of the whole estate, by consent of the executor or administrator, without any order of Court, except to discharge such executor or administrator, his obligation is commensurate with the amount received, and extends as well to debts allowed and approved, as to those which have not been recognized as debts of the succession; all of which debts may be sued for and collected in the District Court.

Where there is an agreement of partition among several heirs or devisees, whereby one or more contract to hold the others harmless against all demands against the estate, the latter are not necessary parties to a suit against the former on a claim against the estate.

In the case of Neill v. Hodge, 5 Tex. R. 487, and in other cases, we have held that an administrator may have claims set aside which were acknowledged by him in ignorance of the facts or from fraudulent representations of the holder. Much more may an heir (to whom the estate has been delivered over) have such acknowledgments set aside (by proper allegation and prayer, when sued upon said claims in the District Court,) and especially where the executor or administrator has colluded with the creditor, acknowledging claims, for his own benefit, or to the injury of the estate, which he knew were groundless, or where he acts with a degree of ignorance, which in effect amounts to a fraud upon the estate.

Where after an estate has been partially administered, the executor or administrator is discharged, and without any order of Court, transfers the estate to the heir, upon contract of the latter to hold him harmless, a creditor whose claim has been allowed and approved, may recover of the heir, in the District

Court, at any time within ten years from the date of the approval of his claim ; that being the period of limitation on a judgment.

Where the answer denies all the allegations of the petition, except such as may be thereinafter admitted, and afterwards alleges that certain writings on which the plaintiff relies in his petition, were fraudulently made, (not forged) it is not necessary for the plaintiff to prove such writings, as the allegation admits the making of them ; so also where an assignment, which was filed with the petition, was alleged to be pretended, on the part of the assignor and the assignee, (the plaintiff,) it was held that it was not necessary to prove the genuineness of the assignor's signature.

Appeal from Colorado. Tried below before the Hon. James H. Bell.

Benjamin F. Stockton, a resident of Colorado county, on the 7th of March, 1842, being about to start on an expedition against the Mexicans, who were invading the country, made his last will, devising the bulk of his property to his only daughter, now the defendant Anne E. Montgomery, making certain special bequests to two nephews and a niece, the children of Henry Terrill, and making said Terrill executor of his will and guardian of the said Anne, and giving him "full and efficient powers to act for her in all respects until she becomes of age or marries, when such executorship and guardianship to cease, at her will." The will was admitted to probate June 27th of the same year, and letters testamentary issued to said Terrill.

On the 27th of June, 1852, the said Anne, by her next friend, R. Stockton, filed her petition in the County Court, for an account and for partition ; service of this was acknowledged same day by Terrill ; R. Stockton was afterwards dismissed, on the ground that he had never authorized his name to be used ; the dismissal to be without prejudice.

In February, 1853, the said Anne was married to John G. Montgomery ; and in March, thereafter, they filed another petition, and prayed the removal of said Terrill from the executorship, because he had failed to file an account, &c. ;

service in March ; at March Term executor ordered to account ; amendment in April alleging gross neglect of duty, as ground for removal ; service in April. June 27th, 1853, an amended petition filed, in which petitioners withdraw all their previous petitions and amendments, and pray the removal of Terrill, by virtue of the provision in the will, which limited said Terrill's executorship at the will of the said Anne after her marriage. At August Term, an order was made accordingly for said Terrill's removal. No person was appointed in his stead, and no order was afterwards taken on the estate.

In December, 1853, agreement as follows : State of Texas, county of Colorado. This agreement, entered into between Henry Terrill, of the first part, and John E. Montgomery and wife, Anne E. Montgomery, late Stockton, daughter of B. F. Stockton, deceased, of the second part, witnesseth ; that whereas said Terrill was the executor of the last will and testament of B. F. Stockton, deceased, probated in said county, and whereas said Terrill has not made a final settlement of the estate of said Stockton, deceased ; and whereas said B. F. Stockton in said will devised to Edmond, Clarisa and Henry Terrill, children of said Henry and wife, Maria L. Terrill, the following named slaves : Clara, Nathan, Joe and Jane, and six hundred and forty acres of land to be taken out of the half league occupied by him, and in a square form ; and whereas the party of the first part, as guardian of his said children, has instituted suit in the District Court of Colorado county, one for the land, against James S. Montgomery, and one against the party of the second part for the negroes ; and whereas the unsettled condition of the affairs of the said estate is likely to result in tedious, protracted and unpleasant litigation ; and believing it to be the mutual interest of all concerned, the parties hereto (the party of the first part acting in his own right, and as guardian of his said children) have come mutually to the following compromise of all matters between them, appertaining to or growing out of the said estate, viz : the party

of the first part, H. Terrill, for himself, his heirs and assigns, does hereby transfer, assign or release to the said Ann E. Montgomery, all rights, claims, dues, interests and demands which he has against the said estate, or against them for services, rendered in behalf of said estate, commissions or other compensation owing or coming to him from said estate, or said party of the second part, or for debts, dues and demands against said estate, satisfied, paid off or discharged by him, as executor or otherwise, or that may be due or owing him from any cause, or in any manner connected with the said estate, all of which is hereby transferred to them, and forever released, and he hereafter holds no claim against the said estate, or said party of the second part; and, as guardian of his children, he does transfer and release all claims they, or either of them, have for the hire or services of said slaves and their increase, rent for use of the land aforesaid, or that may be coming to them, or either of them, from said estate or party of the second part, in any manner or from any cause whatever. And the said party of the first part guarantees the party of the second part, that his said children, or either of them, shall never set up any claim against said estate, or the second party, for any thing connected with the said estate, except what is here inafter provided for. The said Terrill, party of the first part, at the next Term of the District Court is to dismiss the said suits at the costs of the plaintiff; and the party of the first part is to deliver to the party of the second part the negro woman named Martha, about sixteen years of age. In consideration of the above, the said John G. Montgomery and wife, Anne Elizabeth Montgomery, have deeded by quit claim deed to the party of the first part the land devised to them as aforesaid, and do deliver to them by their guardian, H. Terrill, the negroes willed to them, as aforesaid, and also their increase as follows: Eliza, aged about ten years, George, aged about twelve years, Henry, aged about five years, and Nancy, aged about one year; and they do release all charges for raising

the said negro children, and also all hire for the negro Martha, to this time, and do further release the party of the first part from all responsibility to them on account of said estate, and bind and obligate themselves to hold the party of the first part harmless against the payment of or liability on account of any debt or claim for which the said estate of B. F. Stock. ton is now justly or legally bound, and also to hold harmless the said children of the party of the first part from said debts or claims to any person except the claims of the said Terrill and his said children ; but it is understood this guaranty does not deprive them of any defence there may be against such debts or claims.   The claims and demands hereby transferred and released to the party of the second part are not to be enforced against said Terrill or his said children.   Given under our hands and seals in duplicate this third December, 1853.

(Signed, &c.)

The said Anne and John G. Montgomery took possession of the Stockton estate, except the special bequests, in a week or ten days after the marriage, and continued to hold the property belonging to the same ever since.  The plantation was worth $15,000 to $20,000 ; the negroes worth $10,000 ; other plantation property in proportion ; defendants raised several crops of considerable value.   The unpaid debts were few and not of large amount, compared to the value of the property.

This suit was commenced by John Culton, as assignee of R. H. Stockton, to recover from the said Anne and John G. Montgomery two claims in favor of said R. H. Stockton, against the estate, which had been allowed by Terrell and approved by the Chief Justice.   It did not appear when the suit was commenced, except that it was between the 9th of February and the Spring Term, 1856, of the District Court of Colorado county.   One claim consisted of an item of $400 for overseeing the Stockton plantation for the year 1852 ; an item of $49 99 for overseeing a month and a half in 1853 ; cash paid blacksmith for plantation, $15 ;  and building cistern $15.

Credit, $3 90. This account was proved February 26, 1853 ; allowed by Terrill same day, and approved by the Chief Justice on the 28th. The other claim was for $400, said Stockton's services as overseer for the year 1851, with a credit of proceeds of nine bales of cotton, to-wit : $368, as cash November 30, 1852, and $42 as cash, October 11, 1852 ; and allowed by Terrill May 31, 1852, and approved by the Chief Justice February 28, 1853. Both accounts assigned to plaintiff without recourse, February 9, 1856. The accounts, with the authentication, allowance, approval and assignment, were filed with the petition. The original petition sought to charge the defendants on the ground that the claims which were attached to the petition, were approved during the executorship of Terrill, and that at his removal the defendants, the said Anne being the sole heir, had taken exclusive control of all the property of the estate, and appropriated it to their own use, without taking out letters of administration, and that there was ample property to pay all the debts, &c.

The defendants pleaded in abatement the non-joinder of Edmund, Clarissa and Henry Terrill, the special legatees ; demurred generally ; and for special cause assigned.

1st. That the pretended claim, sued on, is but an account in favor of R. H. Stockton, and is not assignable, so as to enable the plaintiff to sue in his own name.

2d. Petitioner shows that the pretended claim is barred by limitation.

3d. The said petition does not show any contract or employment of the said R. H. Stockton, and shows no consideration for the pretended indebtedness.

4th. Said petition seeks to charge the defendant Anne E. as heir at law of B. F. Stockton, when he left a will, without showing that any property was devised or bequeathed to her.

If demurrer should be overruled defendants answered by general denial of all allegations not expressly admitted ; by plea that if any action ever accrued to said Stockton or said

plaintiff, the same accrued more than two years before this suit was commenced ; by further plea that said Stockton never was overseer of said plantation, and that after proceedings had been commenced by said defendants in the County Court for the removal of Terrill, as executor, said Stockton and Terrill had combined and colluded together to defraud said estate, and had trumped up said claims, and caused the same to be allowed and approved, without any foundation therefor, and in order to collect the same, pretended to transfer the same to plaintiff ; by further plea as follows :

And for further answer, these defendants say, that on the first day of January, 1853, these defendants removed and took possession of so much of the property of said estate, as had not been used, appropriated or wasted by the said Terrill ; and have continued to hold the same ever since in proper and just right of the said Ann E. Montgomery, adversely to said plaintiff, the said Stockton and the said Terrill and all other persons whatever, with the full knowledge thereof on the part of said Stockton and of said plaintiff ; wherefore these defendants say that if the said plaintiff or the said Stockton ever had any just cause of action against these defendants, the same accrued more than two years before the commencement of this suit, and is barred by limitation.

Plaintiff filed an amended petition, in which he alleged all the facts of the case, making the agreement between Terrill and the defendants a part thereof.

The Court instructed the jury, without request, as follows :

That Terrill was the executor of Stockton until he was removed by the County Court, or resigned his trust as executor, and was competent to allow claims against the estate.

A claim against the estate of a deceased person, allowed by the executor, and approved by the Court, becomes the judgment of the County Court on the claim, or has the same effect as the judgment of the Court upon the claim.

If the claims sued on were allowed by Terrell, as executor,

and approved by the Chief Justice of the County Court in February, 1853, or at any time since, they are not barred by limitation.

If the defendants received the estate of B. F. Stockton from the executor, and have since possessed and enjoyed it, they are liable for all legal demands against it.

The following instructions were asked by defendants, and refused :

1st. That, if the jury believe from the evidence that in February, 1853, the defendants received from the executor and took into their possession the property as the property of the defendant Anne E., either in her own original right, or in her right as heir, legatee, or devisee of B. F. Stockton, her father ; and if they further believe that the defendants have ever since had and held said property and the possession thereof as the property of the said Anne E., and if more than two years elapsed after they so took possession of the property, before the commencement of this suit, then the claim of plaintiff, as against these defendants, is barred by limitation.

2d. That if the jury believe from the evidence, that the defendants received from the executor and took into their possession the property mentioned in the inventory of the estate of B. F. Stockton, as the property of the said defendant Anne, either in her own original right, or as heir, legatee or devisee of said B. F. Stockton, and have continued to hold the same ever since as the property of the said Ann E., and if they further believe that the administration of the estate was closed by order of the County Court, in August, 1853, and if more than two years elapsed after the defendants thus took possession, and after the order of the County Court closing the administration of said estate before the commencement of this suit, then the claim as against these defendants is barred by limitation.

3d. That the claim sued on as against these defendants (if they ever were liable therefor) is but matter of account and will be barred by the Act of Limitations in two years after the cause

of action accrued, and that this right of action accrued to the plaintiff whenever the administration was closed by order of the County Court, and the defendant received the estate from the executor.

4th. That to enable the plaintiff to recover on this claim against these defendants, he must prove the correctness of the claim or that the services were rendered.

5th. That an order of the County Court was not necessary to terminate the executorship of H. Terrill ; that the executorship under the will of B. F. Stockton, deceased, could be terminated at the will of Anne E. Montgomery, after marriage, and that by an open control over the property of the estate in her own right, such as taking possession and use thereof in her own right would have that effect.

Verdict and judgment for the plaintiff. Motion for new trial overruled, &c.

There were bills of exception as follows :

This case comes on for trial, and the Court overruled all the exceptions and demurrers of the defendants, and motion of defendants to make the other legatees parties defendants, to which ruling defendants except. The plaintiff offered to read to the jury the accounts made part of the petition sued on, marked ———— without proving the items of the account by any evidence, or proving the genuineness of the signatures of H. Terrill or Archibald McNeill, or that they filled the capacities they assumed at the date of the allowance and approval ; to reading which the defendants objected for the want of proof aforesaid, and also for the want of the seal of the County Court of Colorado county to the approval by McNeill ; their objections were all overruled and the paper, with all the indorsements thereon, read to the jury to which defendants except.

The plaintiff offered to read to the jury the written transfer of the account by Richard Stockton, without proving the genuineness of the transfer or sale of the claims by Stockton, or the genuineness of the signature of Stockton. The Court over-

ruled the exceptions, and the said transfer, with signatures, was read to the jury, to which defendants except.

After the plaintiff had closed his testimony, the defendants offered and proposed to prove by James S. Montgomery, a witness who had been sworn, and who was on the stand, that he, witness, was well acquainted with the property and plantation of B. F. Stockton, deceased ; that it adjoins his plantation ; that witness is the uncle of the defendant Anne E. by marriage ; that he had the principal management and superintendence of the slaves and plantation with the consent of Terrill, the executor, for several years, including years 1851 and 1852 ; that R. H. Stockton was the uncle of the said Anne E ; that he came to the plantation as a mere visitor, sometime before the 1st of January, 1851 ; that he was entirely destitute, and his habits were very dissipated ; that about the last of the year 1850, or the 1st of 1851, Terrill told witness that he would have to drive Stockton from the place ; witness remonstrated with Terrell, on account of Stockton being a relation of the defendant Anne E., and because he had no means of support and no where else to go, and, being unfit for any business, it would be difficult for him to get a support, with his habits ; that to this remonstrance Terrill replied that, if he suffered him to remain, he would spoil all the slaves. Witness then undertook and promised to prevent him from interfering with the slaves, and undertook to see to the slaves and plantation himself, as he had done some time before that. Witness did, with the consent of Terrill, take, have, and exercise control and management of the plantation and slaves, and continued to do so until they went into the possession of defendants, about February, 1853 ; that it was expressly understood and agreed between Terrill and witness, and between witness and Stockton, that he, Stockton, was not to interfere in any manner with either the plantation or slaves ; that said Stockton was there and suffered to remain upon mere charity, and that he never acted, or pretended to act as overseer, and never at-

tempted to exercise any control over, or management of the place ; that said Stockton had not, and frequently admitted to witness that he had not, any knowledge of planting or farming, and had no capacity at all to manage slaves ; that witness was on the plantation every few days, and that, under his directions the negroes made the crops ; that it was expressly understood by Stockton and agreed to by him, that if he was permitted to remain on the place, it would be on condition that he would not in any manner attempt to interfere with or control the slaves or the plantation.

Defendants further offered to prove by George W. Thatcher, that Terrill and Stockton both told witness, sometime in 1851, that Stockton was not the overseer on the plantation.

To the introduction of which evidence the plaintiff objected and the Court sustained the objection, and refused to permit the defendants to introduce said evidence, to which ruling of the Court defendants except, &c.

*G. W. Smith*, and *J. B. & G. A. Jones*, for appellants.

*Robson* and *Quinan*, for appellee.

HEMPHILL, CH. J.    This suit was brought by the appellee, to recover from the appellants, as heirs at law of B. F. Stockton, dec'd, for the services of Richard H. Stockton, as overseer, on a contract made by him with Henry Terrill, the executor, and which, being allowed by the executor and approved by the Chief Justice, was transferred to the appellee.    The demurrer of defendants to the petition, and which may be regarded as extending to the amended petition, was overruled ; and this has been assigned for error.    This assignment raises the question whether the action on this demand against the estate, can be maintained against the defendants as heirs in right of the wife, who is the only child of the testator. The allegations dis-

close the facts that that the testator left but one heir at law, viz : the defendant, Anne E. Montgomery, having named Henry Terrill as his executor, whose office was to cease on the marriage or full age of the said Ann E. ; that shortly after her marriage with the co-defendant, the said executor was removed ; and that all the property of the estate (with the exception of a portion specifically bequeathed to the children of the executor,) passed some time previously, viz : in the early part of the same year, 1853, into the hands of the defendants, where it has ever since remained ; that some time after the removal of the executor, viz : in December, 1853, he, representing himself and his children, entered into a compromise with the defendants, for the purpose of settling the affairs of the estate, distributing the same and adjusting the matters in controversy between them ; and that the defendants then expressly released to the children of the said Henry Terrill the property bequeathed to them, and released them and the said Terrill from all responsibility on account of said estate, and bound themselves to hold the said Terrill and his children harmless on account of any or all claim for which the estate was then justly or legally bound.

It appears, then, that the defendant not only procured the removal of the executor, his office in fact ceasing at the pleasure of the said Anne E., under the will ; that they not only took entire possession and control of the whole property, with all its fruits and profits, but expressly stipulated, in effect, that they would pay the just demands against the estate ; for this is the substantial effect of their agreement to hold the executor and the specific legatees harmless against such claims. Can it be doubted that they hold the property charged with the liabilities to which it had been subject in the hands of the executor ? The effect of an ordinary transfer of property from one person to another, with an agreement on the part of the one who receives, that he will pay the just demands against the one who makes the transfer, is to raise a trust for the creditors

of the assignor, though the transfer was made without their knowledge; and they may maintain their actions against the assignee. (Wallis v. Beauchamp, 15 Tex. R. 305, and cases cited.) There is no difference in principle between the transfer, in the case supposed, and the one in the case under review. The obligation on the part of the heirs, who have taken the property out of the hands of the executor, who have elected to consider the administration as closed, would in itself be sufficient to authorize creditors of the estate to enforce their claims by suit; but when to this is added their voluntary obligation to pay these demands, or in other words, to save the executor harmless, a case is presented of obligation on the part of the heirs, as strong as could be raised against the holder of property charged with a trust in favor of third persons.

If it were not required by law, that the property of a decedent should, for the special benefit of creditors, pass into the hands of an executor or administrator, the heir receiving the property would, on general principles, be bound to discharge its liabilities. Such was the rule of our former jurisprudence, on the acceptance of a succession by the heirs; and such is the rule of the Common Law, as to real property, this passing to the heir without administration, but responsible for a certain class of the debts of the deceased; and this must be the rule, under our present laws, in cases where, after partial administration, the heir assumes control of the property, and especially where he stipulates for the payment of the liabilities of the estate. This obligation on the part of the heirs is, in substance recognized in Art. 1197, Hart. Dig. The Section contemplates the receipt of the estate by the heir under an order of the Court. But the effect is the same, if he voluntarily take possession. The supposition of the previous Section, Art. 1196, is that the executor or administrator would retain in his hands a sufficient amount to pay the debts which had been established or may be established by suit, the heir, devisee or legatee being liable only, by Art. 1197, for demands not

presented to the administrator. But where the heir takes possession of the whole estate, his obligation must be commensurate with the amount received, and extend as well to debts allowed and approved, as to those which have not been recognized as debts of the succession.

We conclude that the petition, original and amended, set forth a good cause of action against the defendants, and that their demurrer was properly overruled.

Nor was there any error in overruling their plea in abatement for the non-joinder, as defendants, of the children of Henry Terrill, the executor, who were devisees under the will. They had been expressly released by the defendants from responsibility for the demands against the estate, and creditors are not bound to join them in an action to enforce such demands.

The evidence shows that after the defendants took the property into possession, no further action has been had on the estate in the Probate Court; that the plantation is worth from fifteen to twenty thousand dollars, independent of the negroes and other personal property; that the proceeds from the crops are very considerable, amply and more than sufficient to discharge the few debts that were due at the removal of the executor; and the plaintiffs were clearly entitled to their judgment, unless the claims be false and fraudulent or barred by the Statute of Limitations as alleged by the defendants.

In relation to the charge of fraud in the claims, the defendants averred, in substance, that the estate was not indebted to R. H. Stockton for any amount whatever; that Henry Terrill, the executor of B. F. Stockton, had wasted the estate; that the claim of R. H. Stockton was presented for allowance after proceedings had been instituted for the removal of Terrill from the executorship to prevent the further waste of the estate; that the said Terrill and Richard H. Stockton, well knowing the fact, but combining to defraud the estate, got up the pretended claim now sued upon, when in truth and in fact

the estate was not in any manner indebted to the said Stockton, and the acts of the said Terrill and Stockton were mere fraudulent contrivances to defraud the estate to that amount, and convert the same to their own use. If the facts, as alleged, be true, they furnish a substantial defence against the claims of the plaintiff. The facts of fraud and collusion between an executor and creditors, in establishing claims against an estate, can be set up to defeat such claims by other creditors, by heirs or persons interested in the estate. This would be allowed as against a judgment in the District Court, where the presumption is that the matter had been litigated and the debt finally proven before judgment; much more would such defence be available to the heirs, as against those quasi judgments, which rest alone upon the acknowledgment of the executor or administrator and the approval of the Chief Justice, and especially where these acts are done during the progress of proceedings for the removal of the executor from office. In the case of Neill v. Hodge, 5 Tex. R. 487, and in other cases, we have held that an administrator may have claims set aside which were acknowledged by him in ignorance of the facts, or from fraudulent representations of the holder ; much more may an heir have such acknowledgments set aside, and especially where the executor or administrator has colluded with the creditor, acknowledging claims, for his own benefit or to the injury of the estate, which he knew were groundless, or where he acts with a degree of ignorance which in effect amounts to a fraud upon the estate. We are of opinion that there was error in excluding the evidence of Montgomery and Thatcher, which was offered to show that Stockton had never been the overseer of the estate, and that both Stockton and Terrill had admitted such fact to one of the witnesses. This evidence was admissible under the plea impeaching the valid, ity of the claims, and there was error in its exclusion.

There was no error in refusing to give the instruction that the claim was barred by the Statute of Limitations. The

claim was in the form of a judgment and subject, as against the executor, to limitations affecting judgments.

The property is in the hands of the heirs, but with the incumbrances affecting it when received from the executor. Among these is the one which prevents the estate from claiming the benefit of the short terms of limitation.

There was no necessity, under the law, that the plaintiff should prove the assignment, as insisted by the defendants.

For the error in excluding the evidence of Montgomery and Thatcher, the judgment is reversed and the cause remanded.

Reversed and remanded.