McMAHAN & Co. v. HARBERT'S ADMINISTRATORS.

1. An administrator has no power to create a debt which will bind the estate he represents,—except in such cases as are expressly provided for by statute.

2. H., a planter, died intestate in 1865, having been in the habit of transacting his business with M. & Co. as his commission merchants. After his death, his administrator conducted the plantation by order of the probate court, and continued its business transactions with M. & Co., and incurred a large indebtedness to them for plantation supplies. The administrator was removed, and administrators *de bonis non* appointed. M. & Co. sued the administrators *de bonis non* for the indebtedness, setting forth the above facts, and further alleging that the supplies were furnished for the benefit and on the credit of the estate alone, were required by its necessities, and were used by it; that there were but few debts against the estate, and the administration was carried on in the interest of the heirs, and not of creditors; and that the claim had been presented to the defendants, who admitted its justness and offered to pay it in other claims. *Held*, that a demurrer to the plaintiffs' petition was properly sustained. The indebtedness was one for which the estate could not be made liable by the administrator, even though he acted under the authority of the

35  451
86  408

probate court. But if the suit had been against the heirs, with proof
that they approbated the creation of the debt, and profited by it, an
equitable liability to pay it might have been established against them,.
as in the case of Montgomery v. Culton, 18 Texas, 736.

Error from Colorado. Tried below before the Hon.
L. Lindsay.

The material facts are indicated in the opinion of the
court, and in the second head-note.

*Moore & Shelley,* for the plaintiffs in error.

*R. V. Cook* and *R. L. Foard,* also for the plaintiffs
in error.—It may have been the intention of the Legis--
lature in passing the laws governing estates of deceased
persons to form a complete system, and, doubtless, as
between the administrator and the estate, the strict let-
ter of the law applies.

In the case of Price v. McIvor, 25 Texas R., p. 771,.
the court say that Article 1340, Paschal's Digest, com-
prises the only debts which the executor or adminis·
trator can create against the estate, and it contemplates
that he will have incurred the expense by the payment
of money, or by becoming personally responsible to·
third parties. On general principles of equity it has.
been held that the estate may be held responsible to
third parties with whom the administrator has created
debts properly chargeable against the estate. In the
case of Caldwell v. Morgan, 21 Texas R., p. 802, the
court say, neither by the common law nor the statute
law has an attorney a direct remedy against the prop-
erty of the ward; but as the·property is equitably
bound, there is no inconsistency in our courts having a.
blended jurisdiction of law and equity in allowing
direct recourse on the ward's property. To the same
effect see 11 Texas R., p. 157, 359.

In Crayton v. Munger, 9 Texas R., 292, the court say,.

"An administrator, it is true, cannot create a charge upon an estate he represents by his illegal or fraudulent acts, and it is equally true that the estate cannot be benefitted or obtain legal advantage as against innocent third parties by means of such acts. The estate can neither be charged, nor can it charge others, by reason of the illegal or fraudulent acts of its legal representatives. It would be a monstrous doctrine to hold that estates may speculate upon the fraudulent acts of their legal representatives." In the case of Swenson et al. v. Walker's Administrators, 3 Texas R., p. 97, where the administrators had promised to pay a claim against the estate, and a third party, trusting to this promise, bought the claim, and the administrator afterwards refused to pay it, the court said, that being the representative of an estate did not confer upon her any right to commit a fraud upon an innocent person, and then shelter herself under her fiduciary capacity. The court cannot lend its aid to the perpetration of so much injustice, but will leave her to account for her administration as best she may with creditors or distributees. (See Dickinson v. MacDermott, 13 Texas R., p. 252; Able v. Chandler, 12 Texas R., p. 92.)

In Lee v. Smith, 18 Texas R., p. 146, it was held, that when property is sold for the benefit of the heir, such heir is chargeable with the amount of the proceeds of said sale and interest.

In Lockhardt v. White, 18 Texas R., p. 112, it was held, that if the administrator sold property at private sale, she can only be compelled to account for its value.

The case of Montgomery v. Nash, 23 Texas R., p. 158, etc., is similar in many respects to the one now before the court; and applying to this cause the law laid down in that, we think it clear that the plaintiff in error can recover.

Now, in the case at bar it is alleged that all the supplies, moneys, drafts paid, etc., set forth in plaintiff's account, were used in the payment of the debts of the estate and for its necessities, and so the plaintiffs in error would have proved. It should not affect the liability of the estate to the plaintiffs in error that the administrators of Harbert mismanaged the estate, or managed it dishonestly, unless the plaintiffs in error knew, or could have known by the use of reasonable diligence, of these illegal acts of the administrator, or participated in some way therein. We contend that McMahan & Co. were not bound to know what was done with the moneys, supplies etc., after they passed into the hands of the administrators.

The question, we conceive, is whether, at the time they furnished said supplies, moneys, etc., they were furnished under such circumstances as enables them to hold the estate liable.

Now, we hold that the very fact that administrators, were appointed by the county court on Harbert's estate, invested them, so far as innocent third parties are concerned, with certain powers to bind the estate. Representing the estate, they are bound in their dealings with third parties to act according to the dictates of common honesty and good faith. (Crayton v. Munger, 9 Texas R., p. 288 ; Able v. Chandler, 12 Texas R., p. 92.)

According to the theory of defendants in error, administrators can bind third parties to the estate, but cannot throw a liability on the estate, unless it be done in strict and literal accordance with the statute.

Though our statutes provide a system of laws for the government of the estates of deceased persons, and it may generally be said that these statutes control in any given case, yet our courts, when it becomes necessary to protect the rights of innocent parties and hinder the

commission of frauds, will engraft upon these statutes the general principles of equity. Thus, according to the cases heretofore cited above, though an attorney or other party cannot, by the common law or the statutes, render the estate personally liable to him, yet, under the general principles of equity, he is enabled to do so.

If the money obtained from McMahan & Co. went into the body of the estate and was used by the estate, it matters not in what shape that money was furnished, whether in cash actually paid to the administrators, the drafts of the administrators on the plaintiffs in error, or the drafts of the latter in favor of third parties.

Suppose there were no orders of court allowing the administrators to sell the crops grown on the plantation; yet crops were grown and sent to McMahan & Co. by the legal representatives of the estate, sold, and the proceeds paid to the administrators; now, would it not shock the conscience, and, in the language of Judge Wheeler, be monstrous, to hold that these acts of the administrators were illegal to such an extent that the cotton still belonged to the estate, and that the estate, or some new representative thereof, could force McMahan & Co. to pay again the value of the cotton? Yet such must have been the opinion of Judge Lindsay, and certainly was the theory of the defense, as is demonstrated by their pleas in reconvention.

Admit that there was no order of court to carry on the plantation in 1867, yet it was carried on; crops were raised, sent to McMahan & Co. to be sold, and accounted for. If the plaintiffs in error in good faith furnished supplies and moneys to raise the crops for said year, without any knowledge that the administrators were acting without an order of court, should this, either in law or equity, prevent their recovery?

It is alleged in the pleadings, that the plantation was

carried on in 1867 with the knowledge of the court, and the tacit consent thereof, and the full consent of the heirs, who were alone interested in the estate. Now, could McMahan & Co., seeing the administrators in actual possession of said plantation, farming and cultivating the same, right under the nose, as it were, of the county court, conclude otherwise than that said administrators had a legal right to do as they were doing; and were they bound to look further than to see the legal representatives of the estate in the full control and management thereof, clothed apparently with all the *indicia* of legality?

Our courts will not permit a wrong or injustice to be done by sticking too closely to the letter of the law. The statute provides, that if the executor fails to present the will for probate within thirty days after the death of the testator, then administration with the will annexed shall be granted on the estate of said testator. Yet in Stone v. Brown, 16 Texas R., 425, the court allowed the executor to show a reasonable excuse for failing to present the will within the thirty days.

Even if it appear that an administrator was discharged, yet if the county court afterward recognized him as such, the presumption arises that the order of discharge has been revoked. (Boyne v. Garrett, 17 Texas R., 330; Townsend v. Munger, 9 Texas R., 300; Poor v. Boyce, 12 Texas R., 440.)

An extension of the term of administration will be presumed, if necessary to support the acts of the administrator, where he has been recognized by the probate court as such. (Hunt v. Horton, 12 Texas R., 285; 13 Texas R., 214 and 216; 15 Texas R., 557, 604.)

In the case of Bartlett v. Cocke, 15 Texas R., 471, it was held that third parties were not required to look further than to see that a person, once duly invested

with the powers of administrator, continues to act as such with the sanction of the court.

We contend, then, that the very fact of there being an administrator on the estate, bonded, qualified and recognized as such by the county court, confers powers upon him in his dealings with innocent third parties to bind the estate in matters in which, perhaps, the court might not approve, as between him and the estate. (See Swenson v. Walker, 3 Texas, 97, and Dickinson v. MacDermott, 13 Texas, 252.)

*Harcourt & Harcourt*, for the defendants in error.

WALKER, J.—This is an action by T. H. McMahan & Co., brought in the district court against the administrators *de bonis non* of the estate of Wm. Harbert, deceased, to enforce the payment of a debt created by a former administrator, Thomas C. Harbert. Thomas C. Harbert, it would appear, qualified as the administrator of his father Wm. Harbert's estate, in the year 1865 ; that during that year and the year 1866, he carried on a large plantation, which belonged to his father's estate ; that during a portion of the time he was absent from the estate ; and that Stephen Harbert, one of the defendants to this action, acted as agent for his brother, Thomas C., during his absence.

The plaintiffs in the action were commission merchants, with whom William Harbert in his lifetime transacted the business of his plantation ; and after his death his administrator continued to transact the business with the plaintiffs as commission merchants, purchasing supplies for the estate, taking up money on account, and making sales of the products of the plantation. In the progress of this business, it is claimed by the plaintiffs that a large balance accrued in their

favor.   The account is set out in the petition, and consists of money, and supplies of different denominations, such as would be necessary to one carrying on a large plantation.   It would appear from the petition, that during the year 1866, Thomas C. Harbert had obtained an order from the probate court to carry on the plantation for that year.

At the December term of the probate court of Colorado county, for the year 1867, Thomas C. Harbert was removed from the administration of his father's estate, and the defendants below were appointed administrators *de bonis non.*   It is insisted by the plaintiffs in error, that the estate of Wm. Harbert, deceased, is liable for their debt; that the heirs of the estate were greatly benefited by having the plantation carried on; that they received all the benefits resulting from the business transactions between the plaintiffs and the administrator; and that large advances, or dividends, had been paid to them out of their father's estate. Were this a proceeding in equity against the heirs of Wm. Harbert, deceased, we should give it great consideration; but it is an action brought against the administrators *de bonis non,* to fix a liability upon the estate. This might seriously affect the creditors; and although it is claimed that the estate of Wm. Harbert owed but few debts, it does not appear that all those debts have been discharged.

Thus it will be seen that, were we to recognize the principle of law as claimed by the plaintiffs in error, the creditors of Wm. Harbert, deceased, might be seriously affected in their rights by the allowance of claims created by the administrator, for which the estate was not liable at the death of the intestate.

We are clearly of the opinion that it is beyond the power of an administrator to create a debt which can

bind the estate of his intestate. (See McKinney v. Peters *et al.*, Dallam, 545.) In the case of Price v. McIvor, 25 Texas, 766, Chief Justice Wheeler refers to Article 1340, Paschal's Digest, as containing the only law under which an administrator can create a debt against the estate he represents ; and this section of the statute will not warrant an administrator in creating a debt such as herein sued for. Nor was it in the power of the probate court to authorize the creation of such a debt. (See Francis v. Northcoat, 6 Texas, 185.) Other cases have been decided at the present term of the court, in which the law regulating the presentation of claims, and the bringing of suits thereon, has been commented on, and the view we take of this case renders it unnecessary that we should discuss that branch.

The cases of Montgomery and Wife v. Culton, and Montgomery and Wife v. Nash and others, 18 Texas, 736, and 23 Texas, 156, *et seq.*, are insisted upon as authorities in this case. The cases are not applicable ; and we would here suggest that were this suit brought against the heirs of William Harbert, upon a state of facts analogous to that found in Montgomery and Wife v. Culton, we should not hesitate to apply the doctrine of that case. That was an action based upon a contract between Terrill, as the administrator of Benjamin F. Stockton's estate, and Anne E. Montgomery, the sole heir of Stockton, and her husband John G. Montgomery. The Montgomerys had relieved Terrill from the administration, upon a contract to hold him harmless of the debts of the estate. The estate had then passed to the heir, and it was shown upon the trial that Mrs. Montgomery had directly and indirectly received the entire benefit derived to the estate by the creation of the debts sued on. Four hundred dollars of money had been borrowed to defray the expenses of Mrs.

Montgomery whilst a girl at school.   We make a short but very comprehensive extract :   "It appears, then, that the defendant not only procured the removal of the executor, his office in fact ceasing at the pleasure of the said Anne E. under the will—that they not only took entire possession and control of the whole property, with all its fruits and profits, but expressly stipulated, in effect, that they would pay the just demands against the estate ; for this is the substantial effect of their agreement to hold the executor and the specific legatees harmless against such claims.   Can it be doubted that they hold the property charged with the liabilities to which it had been subject in the hands of the executor ?   The effect of an ordinary transfer of property from one person to another, with an agreement on the part of the one who receives, that he will pay the just demands against the one who makes the transfer, is to raise a trust for the creditors of the assignor, though the transfer was made without their knowledge ; and they may maintain their actions against the assignee."   (Wallis v. Beauchamp, 15 Texas Reports, 305, and cases cited.)   In adopting and approbating the doctrine here laid down, we must not be understood to hold that the claim of the plaintiffs in error is a just claim against the estate of Wm. Harbert, deceased ; but suppose the case at bar to have been analogous to that decided in the opinion of Chief Justice Hemphill, and we should at once apply the same equitable principles which governed that case.

If it can be shown that the heirs of Wm. Harbert approbated or acquiesced in the creation of the debt for which the plaintiffs sue, and have actually been the recipients of benefits derived therefrom, there can be no doubt but that they are in equity bound to pay it ; but the action cannot be maintained against the admin-

istrators *de bonis non*, and we therefore affirm the judgment of the district court.

AFFIRMED.