## Geo. C. Altgelt, Administrator, et al. v. Alamo National Bank.

### No. 1355. Decided November 22, 1904.

**1.—Partnership—Death—Dissolution—Independent Executor.**

An independent executor has no power to continue, as such executor, a partnership business conducted by decedent, unless authorized to do so by the terms of the will; and where his decedent, E., had carried on a business under the name of E. & Co., which her independent executor continued under the same style after her death, and there was evidence tending to show that E. was not its sole owner, others being interested as partners with her, it was error to hold the estate liable on notes executed by the independent executor, in the name of E. & Co., in carrying on such business, without a finding that there was not, in fact, any such partnership. (Pp. 260-267.)

**2.—Same.**

The common law, by which the partnership was dissolved on the death of a member, applies in this State and effects such dissolution (Rev. Stats., art. 1867) and the surviving partners and not the personal representatives of the deceased succeed to the assets and have the right to close up the business. Rogers v. Flournoy, 21 Texas Civ. App., 558, followed. (Pp. 260-262.)

**3.—Same.**

There being no agreement by the partners for continuing the business upon the death of one of them, nor authority given by will of the deceased for its continuance by the executor the estate could not be held liable upon notes given by such executor in carrying it on. (Pp. 262-267.)

**4.—Same—Statutes.**

Article 1984 of the Revised Statutes, in providing for continuing a business belonging to the estate by the executor, did not repeal the common law as to partnership so as to authorize the executor to continue a business carried on by decedent in partnership with others. (Pp. 262-267.)

**5.—Same—Statutory Construction.**

See opinion, passim, for discussion and application of various principles of statutory construction, especially the effect to be given to a general provision adopting the principles of the common law, and the restriction of general language in a statute to subjects of a particular class. (Pp. 260-267.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

The Alamo National Bank sued Altgelt, as administrator, on notes

given by an independent executor previously administering the estate, in the name of Elmendorf & Co. and had recovery in accordance with peremptory instructions by the trial court. Defendant appealed, and on affirmance obtained writ of error.

*Newton & Ward* and *Denman, Franklin & McGown,* for plaintiffs in error.—Henry Elmendorf, as independent executor of the estate of Amalie Elmendorf, deceased, had no authority, either under the will of Amalie Elmendorf or the law, to execute the notes sued on in the name and behalf of Elmendorf & Co., so as to create a binding obligation on the estate of the said Amalie Elmendorf. Rules on Construction of wills: The intention of the testator to be gathered from the context of the will must govern: Cleveland v. Cleveland, 89 Texas, 445; Lake v. Copeland, 82 Texas, 464; McMurray v. Stanley, 69 Texas, 227; Peet v. Commerce & E. S. Ry. Co., 70 Texas, 526; Faulk v. Dashiell, 62 Texas, 652; Vardeman v. Lawson, 17 Texas, 18; Burwell v. Mandeville, Ex., 2 Howard, 570-577. In arriving at intention, the general scope and objects of the will must be taken into consideration: Hunt v. White, 24 Texas, 651; Lynn v. Busby, 46 Texas, 603. Plain and unambiguous words of the will must prevail: 1 Redfield on Wills, 429 (star page). Words in general are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another can be collected. Rules of Construction, 1 Redfield on Wills, pp. 425, 427, 430, 432, note 16 (star page). Authorities as to dissolution of partnership by death, and rights and duties of surviving partners: Landa v. Shook, 87 Texas, 608; Alexander v. Lewis, 47 Texas, 481; White v. Tudor, 24 Texas, 639; Long & Berry v. Garnett, 59 Texas, 231; Cook v. Carson, 45 Texas, 429; Kendall v. Riley, 45 Texas, 20; Haddock & Co. v. Crocheron, 32 Texas, 276; Speake v. White, 14 Texas, 364; Brown & Co. v. Chancellor, 61 Texas, 445; Baptist Book Concern v. Carswell, 46 S. W. Rep., 858; Fulton v. Thompson, 18 Texas, 278; Cavitt v. James, 39 Texas, 197; Seward, Freeman & Co. v. L'Estrange, 36 Texas, 295; Kellar v. Self, 5 Texas Civ. App., 393; Tarver v. Evansville Fur. Co., 20 Texas Civ. App., 67; Funk v. Heinz, 23 S. W. Rep., 417; 11 Am. and Eng Enc. of Law, 813, N. S.; 22 Am. and Eng. Enc. of Law, 199, 211, 214; Shields v. Fuller, 65 Am. Dec., 293, note; 3 Williams on Ex., and cases cited, 317 and notes; 2 Lindley on Partnership, 590, 594, 615 (star page); Geo. C. Altgelt, Administrator, v. D. Sullivan & Co., decided July 17, 1903, by this court. Authority on the proposition that power given an executor in a will to manage and convey at his discretion does not authorize him to continue the estate in a former partnership. Citizens Mut. Ins. Co. v. Ligon, 59 Miss., 305. Authority on the proposition that an independent executor can exercise no powers except such as are conferred in the will or necessary to its execution: Blanton v. Mayes, 58 Texas, 422; Howze v. Howze, 19 Texas, 554; Pascal v. Acklin, 27 Texas, 193; Orr v. O'Brien, 55 Texas,

158; Masterson v. Stevens, 37 S. W. Rep., 364. On the proposition that article 1934 of the Revised Statutes applies as well to an independent executor as to an administrator: Dwyer v. Kalteyer, 68 Texas, 563. As to construction of article 1934, Revised Statutes, 1895. Pasch. Dig., art. 1330; 2 Pasch. Dig., art. 1518; Higgins v. Rinker, 47 Texas, 395; Endlich on Int. of Stat., sec. 113; Geo. C. Altgelt, Administrator, v. D. Sullivan & Co., decided July 17, 1903, by this court. As to authority to execute promissory notes: Arts. 2091-2227, Rev. Stats.; McKinney v. Peters, Dall., 545; Price v. McIvre, 25 Texas, 769; Adams v. Pettus, 36 Texas, 108; Gregory v. Leigh, 33 Texas, 813; McMahan v. Harbert, 35 Texas, 459; Vardeman v. Ross, 36 Texas, 111; Teal v. Terrell, 48 Texas, 509; Adriance v. Crews, 45 Texas, 182; Reinstein v. Smith, 65 Texas, 249; Marks v. Freeman, 52 S. W. Rep., 647; Morehead v. First Natl. Bank, 116 N. C., 412; First Natl. Bank v. Marshall, 7 Atl. Rep., 207; Schlicker v. Hemenway, 52 Am. St. Rep., 118; Perry v. Cunningham, 40 Ark., 185; Ness v. Wood, 42 Minn., 427; Stuart v. Allen, 16 Cal., 473; Lynch v. Baxter, 4 Texas, 431; Estate of Page, 57 Cal., 238; Danielwitz v. Sheppard, 62 Cal., 339; Ralsfon v. Cannon, 2 Pac. Rep., 205; Fitzhugh v. Fitzhugh, 62 Am. Dec., 653; Harding v. Evans, 29 Am. Dec., 255; McEldery v. McKenzie, 27 Am. Dec., 643; Merchants Bank v. Weeks, 38 Am. Rep., 661. As to the question that Elmendorf & Co. was a partnership, see: Cothran v. Marmaduke, 60 Texas, 372; Galveston H. & S. A. Ry. Co. v. Davis, 4 Texas Civ. App., 476; Dilley v. Abright, 19 Texas Civ. App., 489; Berthold v. Goldsmith, 24 How., 536.

The partnership of Elmendorf & Co. as it existed at the date of the death of Amalie Elmendorf was dissolved on her death on July 10, 1899, and the right to wind up the partnership business vested in the surviving partners, Emilie Elmendorf, Henry Elmendorf and Benno Engelke, but neither had the right to create new obligations binding upon said partnership or the estate of Amalie Elmendorf. Same authorities.

*Wm. Aubrey* and *Chas. W. Ogden,* for defendant in error.—Henry Elmendorf, as independent executor, had, under article 1934 of the Revised Statutes, the power, and, if it appeared to him to be most for the interest of the estate, it was his duty to carry on, or cause to be carried on, any business "left by his" testatrix, the disposition whereof was not specially directed by the will. Dwyer v. Kalteyer, 68 Texas, 563; Von Hoffman v. Quincy, 4 Wall., 550; Smith v. Elliott, 39 Texas, 211; Page on Wills, sec. 465; Rev. Stats., art. 3268; Laughter v. Seela, 59 Texas, 183; Koerner v. State, 2 Texas, 493; Rev. Stats., General Provisions, sec. 3; Turner v. Cross, 83 Texas, 219; Schultze v. Alamo Ice Co. 2 Texas Civ. App., 242; Cannon v. Vaughan, 12 Texas, 399; Brooks v. Hicks, 20 Texas, 666; Galveston B. & C. N. Ry. Co. v. Gross, 47 Texas, 435; Runnels v. Belden, 51 Texas, 48; Russel v. Farquhar,

55 Texas, 355; McInery v. Galveston, 58 Texas, 340; Tsoi Sin v. U. S., 116 Fed. Rep., 920; Cooper v. Yoakum, 91 Texas, 391; Altgelt v. Sullivan, 9 Texas Civ. App., 881; Paul v. Ball, 31 Texas, 10; Bell County v. Alexander, 22 Texas, 256.

If Henry Elmendorf, as independent executor, had the power to carry on the mercantile business, then his authority, as a general agent for the management of the business, was coextensive in scope with the business itself.    He possessed and could exercise the same power and authority that his testatrix could, if living, and could conduct the business in the same way as the latter was in the habit of doing before her death.    Faulk v. Dashiell, 62 Texas, 648; Prieto v. Leonard, 74 S. W. Rep., 41; Stevenson v. Roberts, 64 S. W. Rep., 230; Collins v. Cooper, 65 Texas, 464; Callaghan v. Grenet, 66 Texas, 238; 1 Am. and Eng. Enc. of Law, 2 ed., 997, 1020; Peter v. Beverly, 10 Pet., 532.

The reasonable contracts entered into by an independent executor while in the exercise of his legal powers as such, can be enforced against the estate.    Reinstein v. Smith, 65 Texas, 247; Callaghan v. Grenet, 66 Texas, 238; Stevenson v. Roberts, 64 S. W. Rep., 230; Prieto v. Leonard, 74 S. W. Rep., 41; Adrience v. Crews, 45 Texas, 181; Caldwell v. Young, 21 Texas, 800; Primm v. Mensing, 14 Texas Civ. App., 397; Price v. McIver, 25 Texas, 769; Portis v. Cole, 11 Texas, 156; Schleicher v. Hemenway, 52 Am. St. Rep., 116 (see note on Subrogation, p. 126); Fletcher v. American Trust Co., 78 Am. St. Rep., 170; Jones v. Lewis, 11 Texas, 364.

The plaintiff's petition and the undisputed proof shows that the running of limitation on each and every one of the notes sued on was, before any of them was barred, interrupted by renewal notes, executed by the independent executor, which was clearly within his power.    Howard v. Johnson, 69 Texas, 658; Parks v. Prendergast, 23 S. W. Rep., 586; Suhre v. Benton, 25 S. W. Rep., 825; Daniel v. Hardvin, 10 Texas Civ. App., 441; Peter v. Beverly, 10 Pet., 589.

The signature, by one having authority to do so, of a firm name, or of the name under which a business is conducted, to a promissory note, is equivalent to the signature by the person so signing of the names of all persons who may be liable.    Cleveland v. Harding, 67 Texas, 399; 22 Am. and Eng. Enc. of Law, 2 ed., 163-166.

Quite independent of the question of whether, by sharing in the net profits, or in holding themselves out as partners, any one or more of the members of the Elmendorf family thereby became liable to the creditors, as partners, the business of Elmendorf & Co. did, to all intents and purposes, entirely belong to Amalie Elmendorf and her estate. One who shares in net profits has not, necessarily, a proprietary right in the property.    Buzzard v. Bank, 67 Texas, 92; Brown v. Watson, 72 Texas, 222.    There is a marked difference between an amount contributed, and money loaned, to a business.    Lindley on Partnership, 320.

It is a settled law in this State that if an executor lawfully carries on, in accordance with the provisions of article 1984 of the Revised Statutes,

a plantation, manufactory or business belonging to the estate of the decedents, the debts which he incurs in so doing are valid claims against and a charge upon the entire estate. Reinstein v. Smith, supra; Dwyer v. Kalteyer, 68 Texas, 562; Adriance v. Crews, 45 Texas, 181; Price v. McIver, 25 Texas, 771; McMillan v. Hendricks, 46 S. W. Rep., 860; Primm v Mensing, 14 Texas Civ. App., 597.

As to the portion of the indebtedness herein sued upon, which existed at the date of the death of Amalie Elmendorf, the peremptory instruction was, under any view of this case, proper. As to the portion of the indebtedness created after her death, such an instruction was proper, if it held that the executor had the right and power to conduct the business. Stevenson v. Roberts, 64 S. W. Rep., 230; Faulk v. Dashiell, 60 Texas, 648; Prieto v. Leonards, 74 S. W. Rep., 41; Reinstein v. Smith, 65 Texas, 247; Howard v. Johnson, 69 Texas, 658; Parks v. Prendergast, 23 S. W. Rep., 586; Suhre v. Benton, 25 S. W. Rep., 825; Daniel v. Hardvin, 10 Texas Civ. App., 441; Peter v. Beverly, 10 Pet., 589; Collins v. Cooper, 65 Texas, 464; Callaghan v. Grenet, 66 Texas, 238; 1 Am. and Eng. Enc. of Law, 2 ed., 997, 1020; Peter v. Beverly, 10 Pet., 532; Adrience v. Crews, 45 Texas, 181; Caldwell v. Young, 21 Texas, 800; Primm v. Mensing, 14 Texas Civ. App., 597; Price v. McIver, 25 Texas, 769; Portis v. Cole, 11 Texas, 156; Schleicher v. Hemenway, 52 Am. St. Rep., 116 (see note on Subrogation, p. 126); Fletcher v. American Trust Co., 78 Am. St. Rep., 170; Jones v. Lewis, 11 Texas, 364.

BROWN, ASSOCIATE JUSTICE.—This suit was instituted by the Alamo National Bank against George C. Altgelt, as administrator of the estate of Amalie Elmendorf, on five promissory notes aggregating $54,000 principal. Each note bears 10 per cent interest from maturity, and provides for 10 per cent additional as attorney's fee if placed in the hands of an attorney for collection. All are made payable to the order of the Alamo National Bank, and are signed "Elmendorf & Co." and are alleged to have been executed after the death of Amalie Elmendorf by Henry Elmendorf, as independent executor of her estate, for money loaned to him as such executor for the purpose of carrying on the mercantile business in the name of Elmendorf & Co., belonging to the estate of his testatrix.

George C. Altgelt, administrator, answered by numerous pleas and exceptions, and, among other things, pleaded that at the time of the death of Amalie Elmendorf, Elmendorf & Co., whose name appeared to be signed to the promissory notes sued upon, was a partnership composed of Amalie Elmendorf, Emilie Elmendorf, Henry Elmendorf and Benno Engelke, which partnership was dissolved by the death of Amalie Elmendorf. It is alleged that no authority was given in the will of Amalie Elmendorf to her executor, Henry Elmendorf, to create debts or execute obligations binding the estate of the said Amalie Elmendorf.

It is alleged that the business of the firm was not closed at the death of Amalie Elmendorf but was carried on in the name of and for the benefit of the surviving partners without authority to bind the estate of the said Amalie Elmendorf. The plea of partnership was sworn to, also a plea denying that the notes were signed by Amalie Elmendorf or any person authorized to act for her.

Otto Staffel, as guardian of Stella, Armine and Edward Elmendorf, minor heirs of Amalie Elmendorf, intervened in the suit, alleging an interest of his wards in the estate of the said Amalie.

The trial judge charged the jury to find a verdict in favor of plaintiff, Alamo National Bank, against the defendant, Altgelt, administrator, for the amount of the debt sued for with interest and attorney's fees. A verdict was so returned and judgment entered in accordance therewith, which was affirmed by the Court of Civil Appeals. To sustain this judgment it must be held either that there was no evidence of the existence of a partnership among the parties, or that, admitting the partnership to exist, the estate was still liable under the facts of the case. We find that there is testimony sufficient in the record to make the issue of partnership as pleaded by the defendant Altgelt, and to require the court to submit that issue to the jury, unless the facts are such that the question of partnership or not was immaterial. We therefore will assume in the examination and discussion of the questions presented that there was a partnership at the death of Amalie Elmendorf between her and Henry Elmendorf, Emilie Elmendorf and Benno Engelke. We shall omit from the statement all facts found by the Court of Civil Appeals bearing upon the question of partnership and extract from the opinion of that court the following statement of facts:

"Charles Elmendorf died in 1878 or 1880. He was the husband of Amalie and the father of Henry Elmendorf. Prior to his death he established and conducted, under the name of Elmendorf & Co., a wholesale and retail hardware business, of which he was the sole owner, in the city of San Antonio. Upon his death he left a will by which he bequeathed, subject to a legacy of $2000, his entire estate to his wife, Amalie, which included the hardware business, which he had owned and conducted under the name of Elmendorf & Co. The will was duly probated. After his death, Henry Elmendorf, the oldest son of Charles and Amalie Elmendorf, was given by his mother the exclusive management and control of the business in the name of Elmendorf & Co., and of all other business and property interests of his mother. He continued in the exclusive management and control of said mercantile business, as well as the control of all the property interests and business affairs of his mother up to the time of her death, which occurred upon the 10th day of July, 1899.

"At her death Amalie Elmendorf left a will of which she appointed her son Henry executor. The will directs that no bond be required of him and that no other action be had in the County Court or in any other

court in relation to the settlement of her estate other than the probating and recording of the will, and a return into court of an inventory, appraisement and list of claims of her estate. The will contains no express provision either for carrying on or discontinuing the business of Elmendorf & Co.

"The will was probated on the 22d day of September, 1899, and Henry Elmendorf, the executor therein named, duly qualified as such executor. The testatrix's interest in 'Elmendorf & Co.' was inventoried by her executor at $82,025.50, which is shown to be the full value of the assets of said business. After Henry Elmendorf qualified as executor, the business of Elmendorf & Co. was conducted by him as such executor just as it had been before the death of his mother, he having the exclusive management and control of it up to the time, hereinafter stated, of his removal from said executorship by an order of the County Court of Bexar County.

"For a number of years prior to the death of Amalie Elmendorf, the banking business of Elmendorf & Co. was done with the Alamo National Bank. The money earned from the business was daily deposited there. Elmendorf & Co. drew drafts and checks on the bank against these deposits to pay for merchandise purchased and current expenses whenever money was required by the business for such purposes. Frequently during the lifetime, as well as after the death of Amalie Elmendorf, the account of Elmendorf & Co. with the bank was overdrawn, varying from day to day in amounts. The overdrafts were honored by the bank with the understanding that the accounts should be balanced by notes made the bank by Elmendorf & Co. for the amount of overdrafts. Frequently Elmendorf & Co. borrowed money from the bank for the purpose of carrying on the business, executing, in the name of the company, notes therefor.

"On July 10, 1899, the date of Amalie Elmendorf's death, the indebtedness of Elmendorf & Co. to the bank amounted to the sum of $28,784.08 for money loaned and paid on overdrafts and used by the business, for which the bank held its promissory notes. This sum of money is included in the notes sued on.

"After Amalie Elmendorf's death, Henry Elmendorf, as independent executor of her estate, continued to carry on the business of Elmendorf & Co. in the same manner that it was conducted when she was alive. The dealings of Elmendorf & Co. through such executor continued in the same way, it being understood by the bank that the business was being conducted by the executor in the name of Elmendorf & Co. for the estate of his testatrix. With this understanding between the bank and the executor, money was paid and loaned the latter on overdrafts and promissory notes made in the name of Elmendorf & Co., by Henry Elmendorf in his capacity as independent executor of the estate of his mother, for the purpose of carrying on the business of Elmendorf & Co. The money on loans and overdrafts thus received by the executor in

conducting the business of Elmendorf & Co. increased the indebtedness of the concern from $28,784.08, the amount it owed the bank at the date of Amalie Elmendorf's death, to $54,000.

"The notes executed to the bank for the money were from time to time, as they became due, renewed, and the ones sued on are the notes executed by Henry Elmendorf in the name of Elmendorf & Co., as independent executor of the estate of Amalie Elmendorf, for money loaned and paid on overdrafts by the bank for the purpose of carrying on such business. Each of the five notes, as indicated in our statement of the case, bears 10 per cent interest from maturity, and provides for 10 per cent additional as attorney's fees if placed in the hands of an attorney for collection. They all conform in every respect to the description in plaintiff's petition, and the origin and history of each, as alleged in the petition, are fully proven by the undisputed evidence.

"The rate of interest the notes bear and the stipulation they contain for attorney's fees are such as are reasonable and customary. All the notes sued on, after the removal of Henry Elmendorf as executor of the estate, were duly verified and presented as claims against the estate to Benno Engelke after he had qualified as administrator de bonis non, with the will annexed, and were rejected by him.

"On the 25th day of October, 1901, after the date of the execution of each of the notes sued on, Henry Elmendorf was by an order of the County Court of Bexar County removed from his office of independent executor of said estate. On the next day Benno Engelke was appointed temporary administrator of the estate, and on the 20th day of January, 1902, he was by an order of the County Court appointed administrator de bonis non of said estate of Amalie Elmendorf, with the will annexed. He duly qualified under the appointment on the 7th day of February, 1902.

"The order of the County Court appointing him temporary administrator expressly authorized him to conduct the hardware business of Elmendorf & Co. In the inventory of the estate filed by him, the business of Elmendorf & Co. was included and valued at $65,240. This sum comprehends its entire value, for no other interest is mentioned. After permanent letters of administration were granted, he continued to carry on the business of Elmendorf & Co. as he had done by the authority given him in his temporary letters.

"On October 24, 1902, Benno Engelke having failed to comply with a previous order of the County Court requiring him to give a new bond, was removed as administrator of the estate, and the appellee, George C. Altgelt, was appointed administrator de bonis non thereof, with the will annexed. After qualifying, he was ordered by the court to sell the hardware business of Elmendorf & Co., which he had previously inventoried as the property of the estate of Amalie Elmendorf. On June 26, 1902, no sale having been effected, he was ordered by the County

Court to continue his efforts to sell said business, and to buy no new goods except such as might be necessary to fill orders.

"On November 24, 1902, said administrator reported.to the court that he had sold all the goods, wares and merchandise belonging to Elmendorf & Co., except the shelving, counters, etc., the original cost price with carriage added of which was $40,591.09, for the sum of $17,454.17, which was 43 cents on the dollar of the original cost price. This sale was, on December 1, 1902, confirmed by an order of the County Court.

"Mr. Altgelt as administrator took possession of all the assets of every character that he could find belonging to the business of Elmendorf & Co., including about $19,000 in money which he received from Engelke, the prior administrator. The amount of money he had on hand when this case was tried, realized from sales of the property and collection of accounts belonging to Elmendorf & Co., was $44,000, which includes the $19,000 received from Engelke. According to his estimate the whole of the .assets of Elmendorf & Co. is about $46,000. All of which he holds for the estate of Amalie Elmendorf, and it does not appear that anyone else owns or claims any interest in them."

The Court of Civil Appeals found as a fact that there was no partnership between Amalie Elmendorf, Henry Elmendorf, Emilie Elmendorf and Benno Engelke in the business carried on under the name of Elmendorf & Co. at the time Amalie Elmendorf died, holding that it was the individual business and property of Mrs. Amalie Elmendorf, and that Henry Elmendorf had authority under article 1984, Revised Statutes, to continue the business. We have examined carefully the evidence bearing upon that question, and are of the opinion that there was sufficient proof of the existence of a partnership to require the issue to be submitted to the jury. If, however, the executor had the power to continue the business and to bind the estate of his testator, if there was a partnership between the said parties, then the issue of partnership was immaterial, and the refusal to submit it to the jury was not error. The important and controlling question is, in the absence of any provision in the partnership agreement for a continuance of the business after the death of one of the partners and in the absence of any provision in the will of Mrs. Elmendorf empowering her executor to continue the business after her death, did Henry Elmendorf, as her executor, have authority to carry on that business? To determine that question, we must assume the existence of the partnership.

Article 1867, Revised Statutes, reads as follows: "The rights, powers and duties of executors and administrators shall be governed by the principles of the common law, when the same do not conflict with any of the provisions of the statutes of this State." By the common law the death of one partner dissolves the partnership and terminates the powers of the survivors as partners; but the law imposes upon the surviving partners the duty to close up the business and pay the debts of the partnership, accounting to the personal representatives or heirs of the de-

ceased partner for their interest in what shall remain after paying the debts, for which purposes the surviving partner holds the assets as a trustee, and, to enable him to perform the trust imposed, the law gives to him the right and enjoins it as a duty to take the exclusive possession of the assets of the partnership and to administer them for the purposes before stated.   The rule is thus stated: "The right of survivorship in partnership estates is not a beneficial right.   The assets are taken by the surviving partner, charged with the trust or quasi trust to pay the firm debts and wind up its affairs, and it is his duty to account to the representatives of his deceased partner for all partnership assets.   22 Am. and Eng. Enc. of Law, p. 96.   Again, it is said: "The survivors have the exclusive right and duty to act in the settlement of a partnership, and personal representatives of the deceased partner can not interfere." Neither can the surviving partner consent to a participation in the business by such representative.   22 Am. and Eng. Enc. of Law, p. 220; Rogers v. Flournoy, 21 Texas Civ. App., 558, 54 S. W. Rep., 386.   In the case cited a father and son were partners in business; upon the death of the father, the son took charge of the business as surviving partner, and the administrator of the decased partner by agreement with the surviving partner joined in the conduct of the business, receiving one-half of the proceeds of the sale of the property and of all collections.   The surviving partner being insolvent made an assignment for the benefit of the firm creditors but was not discharged because the assets did not pay the required per cent of the debts.   Rogers, a creditor of the firm, brought suit against the surviving partner and obtained judgment against him as such, whereupon Rogers sued out a writ of garnishment against Flournoy, administrator of the deceased partner, who answered, admitting that he had in his hands funds collected from the assets of the partnership.   The estate of the deceased partner was insolvent.   Judge Garrett said: "Upon the death of Thomas McGuill, his surviving partner, Martin McGuill, became vested with legal title to the partnership assets as trustee primarily for the benefit of the creditors of the firm, and ultimately for the benefit of the representatives and heirs of the deceased partner.   Partners may agree upon a dissolution, and defeat the derivative equity of creditors to have the partnership assets applied to their debts.   But the survivor of a deceased partner can not denude himself of the trust with which he becomes clothed by the death of his partner by an agreement with the administrator either to partition the property or to admit him into joint possession and control, recognizing his title to the deceased partner's share thereof.   The duty of the survivor is to administer the trust and wind up the estate, and, after paying off the debts, to deliver the share of the estate in the residue to the heirs and representatives.   The partnership of Thomas McGuill & Son was dissolved by the death of Thomas McGuill, and not by agreement with the administrator.   The administrator could make no agreement for the division of the assets to the detriment of creditors."   Upon

an application, presenting the point decided, this court refused a writ of error in that case.

There being no agreement between the partners for the continuance of the business after the death of one of them, and no provision in the will empowering Henry Elmendorf, executor, to continue the business of the partnership, his acts done in carrying on that business would not, by the common law, bind the estate of Mrs. Amalie Elmendorf. If the partnership existed, the Alamo National Bank can hold the estate of Amalie Elmendorf responsible for the debts contracted after her death only by virtue of some statute of this State empowering the executor to continue the business of Elmendorf & Co.

Counsel for the defendant in error insist with much earnestness and ability that if it be true that the business of Elmendorf & Co. was a partnership when carried on in the lifetime of Mrs. Amalie Elmendorf and at her death, still her executor, Henry Elmendorf, had the authority to continue the business under the following article of the Revised Statutes:

"Art. 1984. If there be a plantation, manufactory or business belonging to the estate, and the disposition thereof is not specially directed by will, and if the same be not required to be at once sold for the payment of debts, it shall be the duty of the executor or administrator to carry on the plantation, manufactory or business, or cause the same to be done, or to rent the same, as shall appear to him to be most for the interest of the estate. In coming to a determination he shall take into consideration the condition of the estate and the necessity that may exist for future sale of such property for the payment of claims or legacies, and shall not extend the time of renting any of the property beyond what may consist with the speedy settlement of the estate."

In construing the foregoing article we must bear in mind that article 1867, Revised Statutes, before quoted in this opinion, prescribes the rule of the common law as the measure of the executor's power and authority, except where a statute of the State on that subject is in conflict with the common law. Therefore the question presented is, did the Legislature, in enacting article 1984, intend to repeal the common law as to the administration of partnership estates? Mr. Sutherland says: "In all doubtful matters when the statute is in general terms it is subject to the principles of the common law; it is to receive such a construction as is agreeable to that law in cases of the same nature." Suth. Stat. Const., sec. 291; Hooper v. Mayor and C. C. of Baltimore, 12 Md., 464; Greenwood v. Greenwood, 28 Md., 369; Arthur v. Bokenham, 11 Mod. Rep., 151. The rule laid down by Mr. Sutherland, and supported by the cases cited, is peculiarly applicable to the facts of this case, for here it is sought by construction to so enlarge the scope of the statutes as to produce a conflict between it and the common law rule declared by article 1867, Revised Statutes, to be otherwise applicable.

In view of the terms of article 1867, the common law, as to adminis- tration of partnership estates, should be considered as embodied in that statute, and article 1984 should be interpreted by the following rule: "The general terms of a later statute will often be restricted where, by prior laws, subjects naturally falling within such general terms have been classified and made subject to distinct and dissimilar regulations. The later law, not showing any purpose to abolish this classification, will be made to operate on that class alone to which by its terms it is applicable." Suth. Stat. Const., sec. 284. Before the adoption of the Revised Statutes of 1879, the common law prescribed the powers of executors and administrators in reference to both individual and partner- ship business of the testator or intestate, and, except by authority con- ferred by will or partnership contract, neither class of business could be continued by an executor or administrator. In making the amend- ment to article 1984 the Legislature used language applicable to the in- dividual business of the deceased which can not be applied to partner- ship business without adding thereto, therefore under the rule quoted the language used must be restricted to the individual business of the deceased.

If it be granted that this language, "business belonging to the estate," is broad enough to include a partnership business, it is not true that it necessarily includes such business, and the general language should be restricted to the individual property, because the administration of part- nership estate was differently provided for in article 1867 by referring it to the common law. The word "business" was introduced into article 1984 by the commissioners of revision in 1879, in whose report the fol- lowing statement is made concerning this title: "A large number of changes and alterations have also been made, the enumeration of which would too greatly increase the length of this report. None of these changes are radical, and they have generally been designed to obviate defects in the practical working of the law which experience has dis- closed." It would have been a very radical change to abolish the com- mon law upon this subject and substitute the statutory method of ad- ministering partnership estates. Instead of remedying a defect in the old law, a "radical" change would have been made. The report makes plain the intention of the commissioners, which became the intention of the Legislature upon the adoption of the report.

Our Revised Statutes, article 3268, prescribes the following rules for the construction of statutes: "The following rules shall govern in the construction of all civil statutory enactments:

"(1)　The ordinary signification shall be applied to words, except words of art or words connected with a peculiar trade or subject matter, when they shall have the signification attached to them by experts in such art or trade in reference to such subject matter.

"(2)　In all interpretations the court shall look diligently for the

intention of the Legislature, keeping in view at all times the old law, the evil and the remedy."

Keeping in view these statutory rules, we will inquire what was the intention of the Legislature in the enactment of the article under consideration? The language used does not in ·express terms empower administrators and executors to continue a partnership business, either by taking entire control of the property, or by participating in the administration of it with the surviving partners. On the contrary, the language—"if there be a * * * business belonging to the estate * * * it shall be the duty of the executor or administrator to carry on the * * * business or cause the same to be done"—seems to contemplate that the business shall be carried on by the administrator or executor alone. This is "the ordinary signification of the words" used and would require other words to be added to express another meaning. The phrase, "belonging to," is defined by Webster thus: "to be a part of;" in which sense it is frequently used, especially in conveyances of property. Martin v. Cope, 28 N. Y., 180; Pender v. Pender, 18 Weekly Rep., 309. We conclude that the words "belonging to" are used to express the relation of the business to be continued to the estate to be administered; that is, the business must be such as employs property which is a part of the estate to be administered by the executor or administrator. This interpretation is supported by the context, by many sound reasons, and by other provisions of our statute concerning the estates of deceased persons. In article 1984 it is expressed that the business must be such as is not "necessary to be sold at once" for the payment of debts; and again, in coming to his conclusion, the administrator or executor must consider the question, as to whether the property may be required for the payment of the debts of the estate. These, provisions so qualify the language, "business belonging to the estate," as to show that it embraces only such property as is subject to sale by the administrator or executor under the order of the court, and such as the executor or administrator has the right to take exclusive possession and control of.

By article 1965 every executor is required, with the aid of the commissioners appointed by the court, to make and file "a full inventory and appraisement of all the estate of the testator or intestate." The interest of the deceased partner in the assets of the firm can not be inventoried and appraised by the administrator or executor as required by that provision of the statute, because the surviving partner is entitled to the exclusive possession and control of the assets of the partnership, free from the interference of the executor or administrator of the deceased partner. Am. and Eng. Enc. of Law, p. 857. The estate of the deceased partner has an interest only in that which remains after the payment of the debts of the firm, and has no right to any specific part of the property employed in the enterprise; it would be impossible to make an inventory and appraisement of such interest, therefore the inter-

est of the deceased partner in the firm assets is not a part of the estate to be administered.

Again, an administrator can not sell the property of his intestate's estate, except by the order of the court. Rev. Stats., art. 2113. The court can regularly order the sale of property only after it has been inventoried and appraised as required by law, hence the administrator could not get an order of the court to sell property which could not be placed upon the inventory of an estate; therefore partnership property which is not subject to be sold by the administrator or executor is not included in the terms of article 1984.

The terms of article 1984 commit the question of continuing the "business" to the judgment and discretion of the executor or administrator, without any intimation that another person shall be consulted, which excludes the idea that the surviving partner may participate in the business continued. If the common law applies, the probate court could have no control of partnership estates; but by article 1985 that court may control the action of the executor or administrator "in regard to such business;" that is, the business to be continued, and the Legislature having failed to prescribe any rules for the administration of partnership property, the terms of the law are not applicable to partnership business.

The construction which would make "business belonging to the estate" include partnership business would necessitate a construction of our statutes which would apply the procedure prescribed for individual estates to the control of partnership property, which would be a most radical change of the law instead of the correction of a defect.

Seeking the intention of the Legislature in the enactment of article 1984, it is proper to consider the consequences which may flow from the construction that counsel for defendant in error place upon it. Mr. Sutherland on Statutory Construction, section 324, says: "Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience, and to oppose all prejudice to public interests. The considerations of evil and hardship may properly exert an influence in giving a construction to a statute when its language is ambiguous or uncertain and doubtful, but not when it is plain and explicit. The same may be said of the consideration of convenience, and, in fact, of any consequences." An interpretation which would embrace partnership business within the terms of article 1984 would necessarily abolish the common law so far as it relates to the subject of administration of copartnership estates, and would result in some very serious and embarrassing consequences which we think should be considered.

Adhering to the decision of Rogers v. Flournoy, above cited, which we believe to be correct, we must hold that an administrator or executor could not join with the surviving partners in the possession and admin-

istration of partnership property, therefore it would be necessary for·· the administrator or executor to take the exclusive possession and control of the entire partnership estate, excluding the surviving partner·· from any participation in it, thereby placing his interests in the hands·· of another, without his consent, and under the control of a court which· has no jurisdiction of the estate of a living man. It is said by counsel for the bank that the administrator could act only by the consent of the surviving partner. If it be admitted that the surviving partner might, deny to the executor or administrator the right of control over the partnership business, we would have the predicament that the law com-- mands the executor or administrator to take possession of the property and continue the business, yet an individual can defeat the law by withholding his consent to its enforcement. The intention to create such·· absurd conditions can not be attributed to the Legislature.

In many States provision is made for the administration of partner-· ship estates by giving the surviving partner the election to take the·· property subject to control by the court, giving bond and returning an· inventory, or, in case he fail to do so, then that the executor or admin-- istrator of the deceased partner shall have control and possession of the· whole patnership estate. But in such event the inventory of the partnership property is to be kept separately from the individual property of the deceased partner, a separate bond must be given by the adminis-- trator or executor for the administration of that property, and the two·· estates be separately administered, whereby the rights and preference·· of creditors as to each estate are protected and enforced. There is no·· provision made by the law of this State by which courts can keep the·· estates separate· from each other and guard properly the rights of all· parties. Can it be presumed that the Legislature intended, by the introduction of one word, to so radically change the law which had been in· force so long, without making any provision for securing the rights of· the different parties in the property? We think that no such consequences could have been intended; and, as additional evidence, we call· attention to the following requirement of article 1965: "Specifying in. such inventory what portion of said estate is the separate property of·· the deceased, and what portion, if any, is represented as community property." The making of that provision, wherein there was a need of it,. justifies the belief that a like safeguard would have been provided if it had been intended to bring the copartnership property into administration with the individual property of the deceased.

Learned counsel for defendant in error insist that the construction· which excludes partnership business from the terms of article 1984 must exclude from the administration all property jointly owned by the de-· ceased and others. The argument is fully answered by the following article of the Revised Statutes:

"Art. 1698. Where two or more persons hold an estate, real, personal.

or mixed, jointly, and one joint owner dies before severance, his interest in said joint estate shall not survive to the remaining joint owner or joint owners, but shall descend to and be vested in the heirs or legal representatives of such deceased joint owner in the same manner as if his interest had been severed and ascertained."

In connection with the article last quoted we call attention to article 2187, which authorizes the partition of property owned jointly by an estate and another. The failure to prescribe some procedure by which the interests of third parties in partnership property might be separated from the interest of the deceasd indicates that the Legislature did not understand that partnership business was included in the terms of the law.

In support of our conclusion we cite Altgelt v. Sullivan & Co., 9 Texas Ct. Rep., 881, decided by the Court of Civil Appeals of the Fourth District, in which that court arrived at the same conclusion that we have reached, and Judge Fly sustained, by clear and forcible reasoning, the conclusion that article 1984 does not embrace a partnership business.

Counsel on both sides of this case have presented their views with marked ability in oral and printed arguments, evincing much thought and careful investigation, from which this court has derived valuable aid in the investigation and decision of the issue.

Other questions presented will not probably arise in the future conduct of the case and will not be discussed.

We are of opinion that the trial court erred in instructing the jury to find a verdict in favor of the plaintiff, and that the Court of Civil Appeals erred in sustaining the judgment of the trial court. It is therefore ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed, that this cause be remanded to the District Court, and that the plaintiff in error recover of the defendants in error all costs in the Court of Civil Appeals and in this court.

*Reversed and remanded.*