(49 South. 18.)

No. 17,538.

LANGLOIS v. GRAGNON et al.

(March 29, 1909.)

1. PRINCIPAL AND AGENT (§ 157*)—ACTS OF AGENT—VALIDITY.

An agent whose interest in a transaction is adverse to his principal cannot bind the principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 588; Dec. Dig. § 157.*]

2. PRINCIPAL AND AGENT (§ 148*)—WANT OF AUTHORITY OF AGENT—NOTICE.

Where, from the circumstances of the particular business, the interests of the agent and of the principal are necessarily adverse, a third person dealing with the agent is chargeable with notice of the want of authority of the agent to bind the principal.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 148.*]

3. BANKS AND BANKING (§ 117*)—WANT OF AUTHORITY OF AGENT—NOTICE.

A cashier of a bank, in sole charge thereof, promised his creditor to deposit in the bank the amount of the debt at maturity. The amount was not credited on the passbook of the creditor, nor was any entry made thereof on the books of the bank. The creditor accepted the false statement of the cashier that the deposit had been made, and drew against the deposit, and his checks were paid on presentation. Subsequently the bank went into liquidation. The creditor did not show that he could have made his claim out of the cashier. *Held,* that the creditor was liable to the bank for his overdrafts, and the bank was not responsible to him as a depositor for the amount the cashier agreed to deposit to his credit.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 288; Dec. Dig. § 117.*]

Action by Rev. J. M. Langlois against D. J. Gragnon and another, liquidators of the People's Bank of Breaux Bridge. From a judgment for defendants, plaintiff appealed to the Court of Appeal of the First circuit, and it applies for instructions. Instructions given.

Burke & Burke, for plaintiff. Martin & Martin and Voorhies & Voorhies, for defendants.

PROVOSTY, J. This matter is before the court on application by the Judges of the Court of Appeal of the First circuit for instructions. The following is a verbatim copy of the application, leaving out mere formal beginning and ending:

"In the year 1907, Reverend J. M. Langlois, of Iberia parish, loaned to Alexandre Pellerin, then cashier of the People's Bank of Breaux Bridge, the sum of $300.

"When the amount became due, upon advice by Pellerin that he was ready to make payment, said parties agreed that Pellerin would make a deposit of this amount in the bank to the credit of Reverend J. M. Langlois.

"Reverend J. M. Langlois, acting on this advice, and accepting the statement of the cashier of said bank that he had made deposit of this amount to his credit, drafted against said deposit, his check being paid on presentation.

"It is admitted that the entire management of said bank, as is customary in all country banks, was at the time in the charge of said cashier, and also that the amount was not credited on the bank passbook of Father Langlois, nor was there any entry made thereof on the books of the bank. Thereafter the bank went into liquidation, and the commissioners in liquidation called upon Father Langlois for an alleged overdraft of his account with the bank.

"Reverend J. M. Langlois, the plaintiff, takes the position that the duty of making entries in the books of the bank was exclusively that of the said cashier, and that the moment he was advised by said officer that the amount had been deposited to his credit the bank became liable therefor; and, further, that if the agreement by the cashier to make the deposit to the credit of Father Langlois did not bind the bank, that the fact that thereafter the drafts of Father Langlois were honored on presentation charged the directorate of the bank with legal notice of these transactions, from which the acquiescence and ratification of the bank is deducible.

"Instead of being a debtor to the bank for the overdraft, Father Langlois alleges that he is a creditor to the amount stated, and prays for payment in due course of liquidation.

"On the point that the cashier was acting within the sphere of his agency, and that the agreement with Father Langlois to deposit the amount to his credit was binding on the bank, plaintiff cites paragraphs 104–120, Boone's

Law of Banking; Merchants' Nat. Bank of Boston v. State Nat. Bank of Boston, 10 Wall. 604, 19 L. Ed. 1008; Bank of U. S. v. Davis, 2 Hill (N. Y.) 465; Railroad Company v. Schuyler, 38 Barb. (N. Y.) 536, 34 N. Y. 30.

"As to the question as to the legal notice chargeable to the bank and as to its ratification of the acts of the cashier, plaintiff cites Law of Banking, § 83; Kerr on Fraud, pp. 235, 236, 237; Am. & Eng. Enc. of Law, vol. 21, p. 584.

"Defendant cites Am. & Eng. Enc. of Law, vol. 3, p. 847.

"In view of the facts above recited, is the bank responsible for this amount to Rev. J. M. Langlois, as a depositor?"

We answer that the bank is not responsible. The effect of holding it to be responsible would be to permit the agent to pay his debt by saddling it on his principal. It stands to reason that such a thing cannot be legal. The principle of law which comes into play in such a case is the following:

"In matters touching the agency, an agent cannot act so as to bind his principal, where he has an adverse interest in himself." Story on Agency, No. 210.

As a corollary to that principle, where, from the circumstances of the particular business, the agent's interest and that of his principal are necessarily in opposition, as in the present case, third persons are charged with notice of such want of authority.

The notice which is thus imputed to Rev. Langlois cuts him off from invoking the rule that, whenever one of two innocent persons must suffer by the acts of a third, he who enables such third person to occasion the loss must sustain it.

In fact, Rev. Langlois not only cannot claim to have been an innocent third person, but, by the statement of facts, does not show affirmatively that he suffered a loss. He does not show that, but for the deception in question, he could have made his claim out of Pellerin. For all that appears, Pellerin may not have had a dollar to his name.

The reports are full of cases illustrative of the application of the above-enunciated principle of the law of agency. In the case of Knabe v. Ternot, 16 La. Ann. 16, this court held that where some of the members of a company form another company, they cannot validly vote to lease the property of the first company to the second.

Said the court:

"No man can be allowed to decide his own cause as judge, and no agent can be permitted to assume duties and trusts incompatible with his agency, nor validly exercise such agency after he has acquired an interest adverse to his principal."

In Brice v. Watkins, 30 La. Ann. 21–23, this court said:

"The agent cannot consent with himself for his principal."

In the case of Bank of N. Y. N. B. Association v. American Dock & Trust Co., 143 N. Y. 559, 38 N. E. 713, the Court of Appeals of New York said:

"It is an acknowledged principle of the law of agency that a general power or authority given to the agent to do an act in behalf of the principal does not extend to a case where it appears that the agent himself is the person interested on the other side. It is against the general law of reason that an agent should be intrusted with power to act for himself and his principal at the same time."

That was a case where the president of a warehouse company had issued a warehouse receipt in his own favor and then obtained money on the pledge of it.

In Lee v. Smith, 84 Mo. 306, 54 Am. Rep. 101, where the cashier of a bank had issued deposit certificates in favor of himself and then given the certificates in payment of his individual debt, the Supreme Court of Missouri said:

"It is unnecessary to consider whether the cashier of a bank has authority, as such, to certify the existence of funds in the absence of actual deposits, for no such general authority, if possessed by him, would justify him in certifying his own check, or in issuing, as he did in this case, a certificate of deposit to himself. He could not do this without representing both sides to the transaction, thus perfecting a contract through only one consenting mind, a thing positively forbidden to agents and trustees in every department of agency and

trust. The law will not permit an agent's private interest to come between himself and his principal. Its actual presence always disables the agent from binding his principal in the transaction. Accordingly, when Mr. Alther, as cashier of the bank, certified that Mr. Alther had deposited the money called for in these certificates, and that the bank would pay to his order the amounts so deposited, upon return of the certificates, he undertook to bind himself in a method forbidden by law."

In Park Hotel Co. v. Fourth National Bank, 86 Fed. 742, 30 C. C. A. 409, where the president of a hotel corporation made the note of the corporation in favor of himself and negotiated it, the court said:

"To the general rule that the acts and contracts of a general agent, within the scope of his powers, are presumed to be lawfully done and made, there is an exception as universal and inflexible as the rule. It is that an act done or a contract made with himself by an agent on behalf of his principal is presumed to be, and is, notice of the fact that it is without the scope of his general powers, and no one who has notice of its character may safely rely or recover upon it without proof that the agent was expressly and specially authorized by his principal to do the act or to make the contract. This exception is a striking illustration of the policy of the law to prevent the possibility of conflict between the duty and the personal interest of an officer or agent. It prohibits him from acting for both himself and his principal wherever their interests clash, and makes every act and contract in which he violates the inhibition voidable at the election of his principal. It forbids him to act at the same time as vendor and purchaser, or as lender and borrower, or as promisor and promisee. It forbids him to sell as the agent of his principal, and to buy for himself; to lend as the agent of his principal, and to borrow for himself; to promise as the agent of his principal, and to accept the promise and reap the benefits himself."

In Lamson v. Beard, 94 Fed. 30, 36 C. C. A. 56, 45 L. R. A. 822, the president of a bank, and "apparently in sole control of the bank," had drawn drafts upon the correspondents of the bank in payment of his own debts, and these drafts had been paid, and the suit was brought to recover back the amounts thus received. The court gave judgment for plaintiff, on the authority of Anderson v. Kissam (C. C.) 35 Fed. 699.

That was a parallel case, except that it was the cashier, and not the president, who drew the draft. The court gave judgment for plaintiff. The court said:

"No principle of the law of agency is better settled than that no person can act as the agent for another in making a contract for himself. Therefore it is that a bank president or cashier has no implied authority to bind his corporation to negotiable paper made for his own use; and, if it appears on the face of the paper that it is payable to the individual who has made it in an official capacity, the obligation is nugatory, and no purchaser can enforce it. Upon this principle it was held in Claflin v. Bank, 25 N. Y. 293, that a general authority to the president of a bank to certify checks drawn upon it does not extend to checks drawn by himself; and, if the face of the check shows the president's attempt to use his official character for his private benefit, every one to whom it comes is put upon inquiry, and if the certificate is false no one can recover against the bank as a bona fide holder."

The syllabus in Lucile Dreyfas Mining Co. v. Willard, 46 Wash. 345, 89 Pac. 935, states the facts and the decision, as follows:

"Just before K.'s election as secretary of complainant corporation, W. sent him 55,000 shares of the company's stock, to 'take them to the secretary,' have them canceled, and procure new certificates in lieu thereof in W.'s name. K. received the certificates, disposed of them otherwise, and after he became secretary executed fraudulent certificates in lieu thereof and forwarded them to W. as genuine shares. Thereafter W. authorized K. to buy stock of the company in the open market in various amounts, which he pretended to do, and later sent W. new certificates of spurious stock in lieu of that supposed to be purchased. Defendant J. purchased certain of the spurious overissued stock from K., for which he paid cash, and he and another also loaned K. money on similar stock as collateral. Held that, though K., as secretary of the company, possessed apparent authority to issue such stock, etc., he was nevertheless in such transaction acting in his personal capacity, or as agent for those to whom he issued such stock, who were therefore precluded from asserting that the same was valid as against the corporation."

The syllabus of the case of Wheeler v. Home Savings Bank, 188 Ill. 34, 58 N. E. 598, 80 Am. St. Rep. 161, is as follows:

"A corporation pledged certain warehouse receipts to secure its loan to a bank. After payment of all but $1,000, its treasurer and general manager, who was largely indebted to the same bank, informed it that, as the corporation owed him more than that amount, he had made ar-

rangements with the corporation to pledge such receipts to secure his individual loan. The bank accepted the receipts, and thereafter, on its request, they were indorsed in blank by the secretary, who was the son of the manager. The corporation thereafter paid its loan without taking up the receipts. The representation of the manager as to the debt due him was in fact false. Held that, treating the pledge for the debt of the manager as the act of the corporation, it was ultra vires and void, and incapable of ratification.

"One who receives from the officer of a corporation the securities of such corporation as security for personal debt of such officer does so at his peril."

In Ward v. City Trust Co., 192 N. Y. 71, 84 N. E. 588, the Court of Appeals of New York said:

"Inquiry of W. & K. would not have satisfied the requirement, for it was apparent that they were acting in their own interest, and hence beyond the general scope of their authority."

This was said of the act of the president and the secretary and treasurer of a corporation in indorsing in payment of their own debts a check belonging to the corporation; and although the president had been authorized by a resolution of the board of directors—

"to take charge of all the property and business of the company, and to make and sign all checks, notes, contracts, and other obligations of the corporation."

See, also, Sherman v. Baker, 20 R. I. 613, 40 Atl. 765; Rochester v. Paviour, 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790; Capital City v. Jackson, 2 Ga. App. 771, 59 S. E. 92. In this last case the authorities are reviewed, and a large number of decisions are cited.