Nos. 413, 414, 415

First Circuit

KENTWOOD BANK v. CAPLES
KENTWOOD BANK v. WALLER
KENTWOOD BANK v. RICKS

(March 6, 1929. Opinion and Decree.)

Purser and Magruder, of Amite, attorneys for plaintiff, appellee.

Ellis, Ellis and Ellis, of Amite, attorneys for defendants, appellants.

LECHE, J. The plaintiff, as its name indicates, is engaged in the banking business at Kentwood in the northern part of the Parish of Tangipahoa. It holds and owns a note amounting to $5,000, made and subscribed by the Louisiana-Mississippi Cooperative Creamery Company, in representation of a loan made to the company for that amount. It also holds as

collateral security to guarantee the payment of said note of $5,000, one lot of several individual notes made and subscribed by stockholders and directors of the creamery company in various sums, three of said notes being made and subscribed by the defendants in the present consolidated cases. The defenses in the three cases being similar, the cases were consolidated for trial and argument.

The District Court rendered judgment in each case in favor of the plaintiff, and defendants have each appealed.

At the time the plaintiff, the Kentwood Bank, made the loan to the creamery company, Richard A. Kemp was president of the Kentwood Bank and was also a director in the creamery company. It seems that the notes held by the bank as collateral security were made and subscribed by stockholders and officers of the creamery company, with the view of guaranteeing the loan which the bank was making to the creamery company in order to enable the creamery company to carry on its business. The proceeds of the loan were used by the creamery company for its own benefit and indirectly for the benefit of its stockholders who were the real parties in interest.

The defense as contained in the answer, is as follows:

Defendants admit making and signing the notes but allege that said notes have been paid in the following manner, to-wit:

That before making the notes declared upon, by agreement between the Kentwood Bank, represented by R. A. Kent and E. P. Miller, president of the Louisiana-Mississippi Cooperative Creamery Company and their agents, and your defendants, said creamery company was to deduct two per cent out of the price of every gallon of milk shipped to it by defendants as well as two per cent from the price of every gallon of milk shipped to it by other persons, and pay same to Kentwood Bank as collected until said note was paid in full. The defendants then charge that the two per cent on the price of the milk received by the creamery company was collected by it, and amounted to a sum. more than sufficient to pay the loan and the notes which they had signed as collateral security. They do not specially charge that the bank received the proceeds of the two per cent of the price per gallon, collected by the creamery company, but they charge that the creamery company in making such collection was acting as agent of the bank and that they, as makers of said notes, were thereby discharged from liability.

Defendants further charge that R. A. Kent was president of the Kentwood Bank at the time of making said notes and was a director or executive officer of the creamery company and through him said bank had full knowledge of all the facts set forth, and by reason thereof, said bank is guilty of laches and negligence towards defendants, and is now estopped from attempting to collect from defendants, a debt which they have already paid according to agreement.

It appears from this statement of the case that the defense of payment is a special one, excludes every other defense, and that the burden of proof rests entirely upon the defendants.

The testimony fails to disclose any express promise on the part of the Kentwood Bank to carry out or to be bound by the alleged agreement to the effect that the bank would rely entirely and solely for the reimbursement of its loan to the creamery company upon the deduction fund of two per cent on the price

of every gallon of milk, which was to be retained by the creamery company when it paid for the milk delivered to it by defendants and others. Nor is there any direct testimony to the effect that the bank had agreed to constitute the creamery company as its agent to collect from its stockholders, directors or others, the money due for its loan to the creamery company. These are mere deductions and conclusions which the defendants were, in good faith, led to believe probably by the managers of the creamery company and not by the authorized managers of the bank.

Even if it were conceded that R. A. Kent permitted or encouraged such a belief to be entertained by the defendants, his conduct and actions would not be binding upon the bank, for it was to the knowledge of the defendants that R. A. Kent's interest as director and stockholder of the creamery company was in direct conflict and antagonistic to the interest of the bank and its stockholders.

The rule that knowledge of an agent is knowledge of the principal has well defined limitations. Mr. Justice Provosty in the case of Langlois vs. Gragnon, 123 La. 453, 49 So. 18, 22 L.R.A. (N. S.) 414, summed up the jurisprudence on that subject, and said, that where from the circumstances of the particular business, the agent's interest and that of his principal are necessarily in opposition, as in the present case, third persons are charged with notice of such want of authority.

It is unfortunate that at the time these cases were tried, R. A. Kent had departed this life, and his version of these transactions could not be obtained. But Walter K. Amacker, who was at the time cashier of the Kentwood Bank and who is now president of that bank, disclaims in most positive terms that the bank had ever agreed to bind itself by the agreement alleged in defendants' answer. Ordinary reason appears to support him in his denial of any agreement on the part of the bank to look exclusively to the fund of two per cent collected by the creamery company from its furnishers of milk for the reimbursement of the loan, for if there had been such agreement the giving of the notes as collateral security would have been a senseless and a vain formality.

Defendants are the victims of their own failure to realize their responsibility when they signed and issued the notes sued on and we are powerless to relieve them.

The District Judge properly disposed of the cases and his judgment is affirmed.