### GREER et ux. v. FARMERS NAT. BANK of SULPHUR.

No. 24555.   Oct. 1, 1935.

Jesse Dunn and Blanton, Curtis & Blanton, for plaintiffs in error.

John C. Powell, for defendant in error.

PHELPS, J. The defendant in error bank, plaintiff below, sought to obtain a judgment against Tom Greer and Beatrice L. Greer, defendants below, for a balance of $567.13 due by them on their note and mortgage. The defendants filed an answer and cross-petition in which they admitted execution and that the balance due was $567.13. The note was dated April 16, 1930. They sought a set-off, however, of $331.75, under the allegation that on October 15, 1929, five months before the date of the note, they had deposited or caused to be deposited $331.75 in money in the plaintiff bank and that the bank had converted and appropriated said money to its own use and benefit and had refused to pay or credit defendants with that amount. The cause was tried to a jury, resulting in a verdict for the plaintiff bank and denying the set-off. This appeal deals entirely with the set-off of $331.75 which the defendants sought to establish.

On and prior to October 15, 1929, Jesse C. Moore was vice president of the bank. As an individual, and not as a representative of the bank, he had occasionally bought hogs from the defendants. On said October 15, 1929, the defendant Mrs. Greer came into the bank with a memorandum of the weights of some hogs which had been weighed and sold to Moore at another town, and sought collection from Moore for that particular bunch of hogs. Moore testified that he figured the amount, based upon her memorandum, as $331.75, and wrote her his personal check for that sum which he had her indorse and return to him, and that he then wrote her a deposit slip for that amount, but that while they were talking his truck driver came in and he called the truck driver over and asked him if he remembered the weights of the hogs, and that it there developed that the check was for too large an amount. Moore testified that he then tore up the check and he thought he tore up both the original and duplicate deposit slips and threw them in the wastebasket, but that it is possible that by that time she had placed the duplicate deposit slip in her purse; that he never mailed her any deposit slip and that later on he obtained the correct weights from the county weigher and paid her husband in cash, in the same deal wherein he had bought about $800 worth of hay from the husband. The fact that he did write the county weigher a letter asking for the true weights was corroborated from the shorthand notes of a stenographer to whom he had dictated the letter.

The defendants introduced no evidence of having deposited $331.75 in money with the plaintiff bank. Mrs. Greer testified that when she went to the bank to see Mr. Moore, and gave him the memorandum concerning the weights of the hogs, he was busy writing out a mortgage for some other person, and that, pursuant to his request, she left the memorandum under a paper weight on his desk and that he said he would send her a deposit slip for the value of the hogs, and that the next day she and her husband did receive said bank deposit slip for $331.75, through the mail, and that they had subsequently lost it. She denied that he had written his check and had her indorse it. This is important, for, as will be seen below, the set-off claim against the bank would have been stronger, had that been the case, and had she indorsed it, than it is under the defendants' version of the facts.

The defendants first complain that it was error to permit Moore to testify that he later paid the defendants for the hogs, inasmuch as the bank did not plead payment in its reply to the defendants' cross-petition, and they set forth the principle that payment is an affirmative defense which cannot

be established under a general denial, and cannot be established at all unless it has first been pleaded. This contention overlooks the fact that the plaintiff bank did not prove nor seek to prove that it had paid the obligation. Its defense was, on the contrary, that it had never been indebted to the defendants, and that the transaction was entirely between defendants and Moore as an individual. The real issue was whether the bank had been indebted to the defendants in the first place; if it was not so indebted, then it was immaterial whether Moore paid his debt. His statement that he had subsequently paid for the hogs seems to have occurred as an incidental voluntary statement of his own. Long before the action was filed, which was the first notice the bank had that the defendants sought to hold it liable on this item, Moore had left the bank, and his severance of connection with the bank took place some nine or ten months prior to the date upon which he eventually paid for the hogs, as per his testimony. We would not place the burden upon the bank, under those circumstances, to allege that Moore's personal obligation had been paid; it is a collateral debt; there is a hint in the record that when these proceedings were started he was hundreds of miles away, and it is not to be expected that the bank would know or be concerned with whether he had paid his personal obligations. We cannot agree with a party who complains that it is error to permit the opposite party to explain the very matter which the first party has set up for the first time in his testimony and which was not referred to by his own pleadings. We must remember that the defendants had not placed the bank on notice, by their pleadings, of the real theory of their claim; they alleged simply that they had deposited $331.75 "lawful money of the United States" in the plaintiff bank; had they set up anything in their cross petition to inform the bank of the matters sought to be proved on trial, that is, the real facts in the case, then the bank would have had an opportunity to investigate the case and shape its pleadings to meet the issues. We think that under the circumstances Moore's testimony that he paid the obligation is but explanatory of the defendants' own evidence, and that the defendants should not be permitted to profit by their own failure to properly plead the facts upon which they based their cross-petition. They alleged that they had deposited money. That they made no deposit of money, or of a check, or of anything else of value, is undisputed; the variance between their pleadings and their proof is that, whereas they pleaded deposit of money, their evidence attempted to establish an entirely different transaction. Under those circumstances we will not hearken to the claim that the plaintiff should not be allowed to explain the new issues injected into the case for the first time at the trial.

The defendants' next proposition is concerned chiefly with the following instruction which was given by the court to the jury:

"The court instructs the jury that in this case, the defendant admitting the execution of the note and mortgage herein sued upon it will be your duty to return a verdict in favor of the plaintiff and against the defendants and each of them for the sum of $567.13 with 10% interest thereon from the 15th day of December, 1930, unless you should further find and believe from the evidence that on or about the 15th day of October, 1929, that one Jesse C. Moore, vice president of the plaintiff bank was indebted to the defendants in the sum of $331.75 as a portion of the purchase price of certain hogs and that the said Jesse C. Moore, when presented with the balance due thereon of $331.75 agreed with the defendant Beatrice L. Greer. that he would mail her a deposit slip for said amount showing a deposit therefor to the credit of the defendant Tom M. Greer, and you further find and believe from the evidence that thereafter he mailed to the defendant a deposit slip showing a deposit in the plaintiff's bank to the credit of Tom M. Greer for said amount, and you further find and believe from the evidence that said $331.75 was never deposited to the credit of the defendant Tom M. Greer in plaintiff's bank or paid by the bank to the defendant, and further find that thereafter and after knowledge on the part of plaintiff's bank, that said deposit slip had been issued by the said Jesse C. Moore, vice president of said bank, and after knowledge that the same had not been deposited to the credit of the defendant Tom M. Greer, that J. D. Mosely, president of said bank, unconditionally promised the defendants, or either of them, that the bank would pay or take care of said deposit, then in that event the defendants would be entitled to a credit on the admitted balance due on said note of $567.13 for $331.75 with 6 per cent. interest thereon from the 15th of October, 1929."

We are unable to determine just what it is that the defendants complain of in the foregoing instruction. Although cumbersome, when it is divided into its separate parts, it no doubt states the issues and the law more favorably to the defendants than was required under the circumstances. The defendants did not request any instructions, nor did they suggest orally or otherwise any amendments to the instructions as given. It

is apparent that in the framing of this instruction the trial court merely outlined or summarized the evidence offered by the defendants and stated to the jury that if they believed those things they were authorized to allow the defendants the set-off.

In one place in the defendants' brief they complain of the fact that under this instruction the court limited the issue as to the delivery of the deposit slip to the act of mailing, and they say that under this instruction if the jury believed that Moore handed the deposit slip to the defendants, they could not allow the offset. We must remember, however, that the defendants' own theory and testimony was that the slip was mailed, and Mrs. Greer denied that Moore ever made out. or that she indorsed the check and received by hand from him the deposit s'ip. Moore's testimony was that he destroyed the slips, and that if she obtained the duplicate it was by stealth. Therefore since both parties denied that the slip was delivered by hand, there was no necessity for placing that issue in the instruction. It has been necessary for the writer of this opinion to read the entire record. From doing so he has become thoroughly convinced that the instructions for defendants should have been limited to the issue of whether the bank, through its proper officers, subsequently made an unconditional promise to pay the alleged indebtedness or give defendants credit for the amount. The defendants obtained this instruction.

It is apparent that the indebtedness which the defendants attempted to set off in this case, if it ever existed, was made some six months prior to the date of the note, and that during all of that time they were receiving monthly bank statements upon which the credit did not appear, and that they made no objection thereto, nor claimed that the bank was obligated to them until after the filing of this suit. They testified that the deal was with Moore personally, and not with the bank, and that for a considerable while afterward they were looking to Moore for the payment, and not to the bank.

Let us assume an even stronger case for the defendants than their evidence would justify, viz., that Moore either handed or mailed the defendants a deposit slip, that the amount indicated thereby subsequently appeared on their bank statements that they were given credit therefor by the bank and that they checked on the increased account. The law is well settled that in the absence of a ratification by the bank it could recover that amount from the defendants if the credit was extended them for the personal indebtedness of Moore.

"If the cashier of a bank, without actual authority so to do, undertakes to pay his individual debts by entering the amount thereof as a credit upon the pass book of his creditor, who keeps an account with the bank, the bank may recover of his creditor the amount of money it may pay out upon checks drawn upon the faith of the unauthorized pass book entries." 3 R. C. L. 531; 7 C. J. 529; Hier v. Miller (Kan.) 75 P. 77, 63 L. R. A. 952; Home Savings Bank of Iowa Falls v. Otterback (Iowa) 112 N. W. 769; Dehaca v. Higgins ( Colo.) 143 P. 832; Langlois v. Gragnon (La.) 49 So. 18, 22 L. R. A. (N. S.) 414.

Thus we say that as a matter of law, except for the issue of ratification, the plaintiff bank was entitled to an instructed verdict, and that the instructions were more favorable to the defendants than the pleadings and the evidence necessitated. On the issue of ratification or adoption, the defendants testified that the bank later unconditionally promised to give them credit for the amount; the bank officials, however, contradicted this testimony; the issue was submitted to the jury under proper instructions, and the jury resolved that issue against the defendants.

For the foregoing reasons, we are unable to conclude, either from a reading of the brief of the defendants, or from our own reading of the record, or our own research of the law controlling the issues, that any error was committed by the court affecting the substantial rights of the defendants. The judgment is therefore affirmed.

McNEILL, C. J., and BAYLESS, WELCH, and CORN, JJ., concur.